409 So.2d 1245 (1982)
Judith S. GOLDSTEIN, a/k/a Judith S. Schniebolk
v.
Barry J. GOLDSTEIN.
No. 12203.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1982.
Shushan, Meyer, Jackson, McPherson & Herzog, Donald A. Meyer and Bradley M. Smolkin, New Orleans, John M. Mamoulides, Dist. Atty., Parish of Jefferson, William C. Credo, III, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Tucker & Schonekas, Gibson Tucker, Jr., New Orleans, for defendant-appellant.
Before BOUTALL, CHEHARDY and KLIEBERT, JJ.
CHEHARDY, Judge.
Defendant, Barry J. Goldstein, appeals a district court decision in favor of plaintiff, Judith S. Goldstein, and against the defendant, recognizing and granting full faith and credit to a judgment of March 6, 1979, rendered by the Circuit Court in and for Montgomery County, State of Maryland, in favor of plaintiff and against the defendant in the sum of $4,002, together with all costs of both the Maryland and the Louisiana proceedings, plus legal interest on all amounts due from March 6, 1979 until paid.
A copy of the March 6, 1979 Maryland judgment was introduced at the trial on the merits of the present case. It states:

*1246 "Upon consideration of Petitioner Judith S. Goldstein, a/k/a Judith S. Schniebolk's Petition for Contempt; testimony from Petitioner that Respondent Barry Jay Goldstein is presently under Court Order to provide $630 per month child support; that there is an arrearage through February, 1979, of $3,355; the Court taking judicial notice of the parties' divorce decree dated May 13, 1974, this Court's Order of June 7, 1977, and this Court's Memorandum and Order of April 28, 1978; and the Court noting that although Respondent Barry Jay Goldstein was personally served on January 16, 1979, with a copy of Petitioner's Petition for Contempt and Show Cause Order, Respondent Barry Jay Goldstein did not personally appear in Court, nor did counsel appear in his behalf; it is by the Circuit Court for Montgomery County, Maryland, Sitting as a Court of Equity, this 6th day of March, 1979,
ORDERED, that Respondent Barry Jay Goldstein be, and hereby is, found to be in contempt of this Court's Orders of May 13, 1974, June 7, 1977, and April 28, 1978, and the Court shall further suspend imposition of any penalties at this time; and it is further
ORDERED, that judgment in the amount of $3355 be entered against Barry Jay Goldstein, as and for arrearages of child support; and it is further
ORDERED, that judgment in the amount of $647 be entered against Respondent Barry Jay Goldstein as and for reasonable attorneys' fees on behalf of the parties' minor children; and it is further
ORDERED, that costs for this action be assessed against the Respondent Barry Jay Goldstein; and it is further
ORDERED, that the present support payments of $630 per month shall continue until further Order of this Court and shall be paid directly to the Family Services Office in the Circuit Court for Montgomery County, Maryland."
Defendant now argues on appeal that the district court erred in overruling the exceptions to the Maryland court's jurisdiction, in overruling the exception of res judicata, and in forcing the case to trial in the court's summer session.
The defendant avers that the court should consider his plea of res judicata because contemporaneously with the Maryland divorce proceedings the plaintiff wife had instituted a URESA proceeding which on May 18, 1978 had resulted in a judgment in the Juvenile Court, Parish of Jefferson, State of Louisiana, condemning the defendant to pay the plaintiff child support of $250 per month. The defendant also testified at trial that he had made the payments regularly on that judgment ever since it was entered. However, in Moreau v. Falgout, 304 So.2d 429 (La.App. 1st Cir. 1974), the court said at 431:
"It is defendant's principal contention here that the judgments of the court in Alaska (URESA), originally in the sum of $175.00 per month and later reduced to $140.00 per month, had the effect of modifying previous judgments of the 16th Judicial District Court for St. Mary Parish which provided for payments of $220.00 per month from October, 1962, until September of 1964, when it was reduced to $195.00. This contention is without merit. The courts of this state have always been open to the defendant to seek a modification of its decree by proper procedure. Defendant did not elect to do this. In Davis v. Contorno, 234 So.2d 470 (1st La.App.1970), we held that L.R.S. 13:1643 `... provides that the remedies available under URESA are in addition to and not in substitution of any other remedies.' 234 So.2d 470, 473."
Although defendant can, therefore, claim credit for the amounts paid under URESA prior to the Maryland judgment for arrearages, he cannot urge that a judgment rendered pursuant to the URESA procedure modifies a previous judgment of another court.
Neither can this court agree with defendant's argument that the Maryland court did not have jurisdiction over him at the time the March 6, 1979 judgment was rendered *1247 and, therefore, the Louisiana district court should not have given full faith and credit to that judgment. Mr. Goldstein testified he moved from Maryland in July of 1977. He said, in regard to the subject Maryland judgment, he had been served with papers in connection with the action in January of 1979 at his address in Louisiana. He said that although he was advised by an attorney to ignore the Maryland proceedings, he did write a letter to the clerk of court in Maryland sending him a copy of the URESA Louisiana judgment.
In the case of Webb v. Webb, 357 So.2d 1288 (La.App. 3d Cir. 1978), the court stated it has long been established that in order for a court to render an award of alimony for a wife or child, it is necessary that there be jurisdiction over the person from whom alimony is due, usually the father and former husband, because this involves a monetary judgment. The court also said at 1290-1291:
"It is basic law that once the jurisdiction of a court attaches in a controversy, jurisdiction is maintained throughout the proceedings and cannot be defeated by removal of the person beyond the jurisdiction of the court. As the Supreme Court stated in Imperial v. Hardy, [302 So.2d 5 (La.) ] supra:
`When a judicial proceeding is begun with jurisdiction over the person of the party concerned it is within the power of the State to bind him by every subsequent order in the cause. Mr. Justice Holmes called this rule "one of the decencies of civilization that no one would dispute." Michigan Trust v. Ferry, 228 U.S. 346, 33 S.Ct. 550, 57 L.Ed. 867 (1912). It would be intolerable if an action once properly begun could not proceed without the continued existence of the original basis for jurisdiction. Under such a rule a litigant who had availed himself of the court's jurisdiction at the inception of the case could avoid the entry of judgment against him by the simple expedient of withdrawing from the State.'
[Citation omitted]
"It is on this basis that Louisiana courts have recognized the concept of continuing jurisdiction in child support and alimony matters where an increase or modification of the award is desired against the nonresident defendant. Under this theory, a court having jurisdiction to grant such an award retains jurisdiction over the nonresident defendant to modify the award or to enter an award for arrearages. E.g., Imperial v. Hardy, supra; Heaton v. Garvin, 314 So.2d 363 (La.App. 3rd Cir. 1975); Anthony v. Anthony, 288 So.2d 694 (La.App. 4th Cir. 1974); Dupre v. Guillory, 216 So.2d 327 (La.App. 3rd Cir. 1968)." (Emphasis ours.)
The jurisprudence of the State of Maryland in regard to this issue was similarly enunciated in Glading v. Furman, 282 Md. 200, 383 A.2d 398, 402-403 (1978):
"`Jurisdiction having been retained, in accordance with the terms of the agreement, for the purpose of determining the amount to be paid, the defendant could not deprive the Court of its jurisdiction by leaving the State.' [Mc Sherry v. McSherry] 113 Md. 395 at 401, 77 A. 653 at 655. A like result was attained under analogous circumstances in Tvardek v. Tvardek, 257 Md. 88, 261 A.2d 762 (1970), where the subsequent petition sought modification of a prior child support award contained in a divorce decree.
* * * * * *
"Clearly, under § 3-602(a), the circuit court was competent to modify the prior divorce decree, by entering a subsequent order for child support, the same as if that earlier decree had explicitly provided for child support in the first instance. The net result of the statute, then, was to incorporate by implication into the 1972 divorce decree a provision reserving power to modify it as effectively as if such a reservation had been originally inserted by the court. See Tvardek v. Tvardek, 257 Md. at 97, 261 A.2d 762. As a consequence, appellee's 1976 petition for child support is properly viewed as a modification of the earlier divorce decree rather *1248 than the commencement of a new and independent proceeding. Thus, for purposes of the continuing jurisdiction doctrine, the petition here clearly arose out of the original divorce suit.
"Application of the continuing jurisdiction rule, as we indicated earlier, imposes a requirement that the nonresident defendant, over whom personal jurisdiction has been initially obtained, be given reasonable notice and opportunity to be heard in each subsequent proceeding if an in personam decree is to be rendered against him. In McSherry and Tvardek, we held that the requirement of notice and opportunity had been met by service of the papers on the defendant's Maryland counsel. But see Maryland Rule 125e. Here, appellant was personally served by a deputy sheriff in the State of Virginia and does not deny receiving actual notice of the support petition. Nor could he contend, consequently, that he was not afforded ample opportunity to be heard.
"We hold, therefore, that since the petition for child support arose out of the original divorce suit and since appellant was given reasonable notice and reasonable opportunity to be heard, the circuit court retained continuing in personam jurisdiction over him for purposes of rendering a binding support order."
The court also said in Anthony v. Anthony, 288 So.2d 694, 696-697 (La.App. 4th Cir. 1974), regarding the necessity for personal service on a defendant or attachment of his property in an action to have past due alimony made executory:
"We find only one reported decision in which this question was presented, Smith v. Smith, 257 So.2d 446 (La.App. 1st Cir. 1972). There the court treated such an action to make past due alimony executory as an attempt to obtain a money judgment and held that personal service or attachment of defendant's property was necessary under LSA-C.C.P. Arts. 6 and 9. That Court rejected the theory that the action to make past due alimony executory was incidental to the original divorce proceedings and affirmed The Family Court's maintenance of an exception to the jurisdiction over the person of the non-resident defendant.
"We do not adhere to those views and find that the case of Williams v. Williams, 211 La. 939, 31 So.2d 170, is dispositive of the issue in this case. There the Court said:
`Counsel are mistaken in their conception of the nature of the proceeding taken by Mrs. Williams. She was not attempting to obtain a monied judgmentthat judgment, i.e., for alimony, was already in existence, having been rendered as an incident to the divorce proceeding. The use of the rule to make the delinquent payments executory was conformable to a method of practice which has been sanctioned by our courts in numerous cases. See Snow v. Snow, 188 La. 660, 177 So. 793 (where all of the prior jurisprudence on this question is reviewed); Cotton v. Wright, 193 La. 520, 190 So. 665, and the recent case of Erdal v. Erdal, La. App., 26 So.2d 377, where a similar question was raised by the defendant husband.
`The rationale of the above cited authorities is that, since a judgment for alimony is payable at fixed periods, it may be difficult, in cases where the husband has failed to discharge his full duty and has made irregular payments, to determine the exact amount for which a writ of fieri facias may be issued. Hence, the court has indicated that a rule, similar to the one in the instant case, is proper in order that the delinquent payments may be computed into a lump sum as a guide to the Clerk and as a basis upon which execution can be issued.'
"Thus, the Supreme Court firmly rejected the idea that the judgment making past due alimony executory is a money judgment and treated the action as a procedural remedy for the wife to accomplish execution of her original judgment."
*1249 In regard to the sufficiency of service of process upon the attorney of record in such a case as the present one, the court also stated in Webb, supra (wherein the husband's attorney of record was served and then withdrew as counsel):
"With regard to service of process, the Supreme Court stated:
`Sufficiency of the service of process on the husband's counsel of record depends on whether the court has jurisdiction over the person of the husband. If the court does have jurisdiction, the service here was proper under Articles 1312, 1313 and 1314 of the Code of Civil Procedure which permits the service of every pleading subsequent to the original petition by delivering a copy thereof to the adverse party, or to his counsel of record.' [Citations omitted]
"We feel, as did the Supreme Court in Imperial, that if the court had jurisdiction over the defendant, service upon his counsel of record was proper. * * *" 357 So.2d at 1290.
In the present case the Maryland record reflects that the action to make the support judgment executory was ordered served upon the defendant's counsel of record. Mr. Goldstein also testified that the papers regarding that action were delivered personally to him in Louisiana. In view of the holding of Webb, supra; and Glading, supra; and Anthony, supra, therefore, service of process was sufficient.
Furthermore, in the Louisiana action in the district court plaintiff followed the proper procedure for execution of a foreign judgment, as required by LSA-C.C.P. art. 2541, by bringing an ordinary proceeding against the defendant and annexing a copy of the Maryland decree to the petition.
Although this court is aware that Louisiana courts have the right, if not the duty, to inquire into jurisdictional facts surrounding a judgment of a sister state (Austin v. Austin, 192 So.2d 890 [La.App. 2d Cir. 1966]), we agree with the district court judge that nothing in the record of the present case relieves the Louisiana courts of the requirements of the full faith and credit clause of the United States Constitution.
Rule II of the rules of the Twenty-fourth Judicial District Court in and for the Parish of Jefferson contains the following provisions:
"Section 1. Court shall be in continuous session throughout the year. There shall be two terms. The first term shall commence on the first judicial day of September of each year and end on the last judicial day of June of each year. The second term shall commence on the first judicial day of July of each year and end on the last judicial day of August of each year.
"Section 2. During the second term of court, the Judges will hear confirmation of defaults and curator cases, injunctions, Rule for alimony, child support and custody, possession of premises, collection of taxes, judgment debtor, to compel answers to interrogatories, civil habeas corpus and mandamus proceedings. Other matters which necessarily require an emergency hearing will also be set and heard but only with the special consent of the judge setting matters for trial, after a full explanation.
"Motions for summary judgment, exceptions, motions for new trials and cases on the merits will also be heard during the second term with the consent of the attorney for each litigant and the judge involved." (Emphasis ours.)
Since the court is granted authority to render judgments fixing alimony and child support during the second session, it would be illogical to conclude that the court is not also empowered to enter judgments making arrearages for child support and alimony executory.
For the reasons assigned, therefore, the district court decision is affirmed.
AFFIRMED.