517 So.2d 1141 (1987)
JOSEPH R. KEENAN COMPANY, Joseph R. Keenan and William T. Brookman
v.
WHITE HOUSE APARTMENTSDONALD S. MOFFATT and Donald S. Moffatt.
No. 87-CA-440.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1987.
Rehearing Denied January 15, 1988.
Writ Denied March 11, 1988.
*1142 John E. Seago, Baton Rouge, and Don Gardner, Harahan, for defendants-appellants.
Frederick R. Bott, Terrence L. Brennan, Joseph L. McReynolds, New Orleans, for plaintiffs-appellees.
Before KLIEBERT, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
This is an appeal from a judgment making a foreign judgment executory in Louisiana. Three issues are raised:
1.) Did the trial judge err in striking defendants' reconventional demand filed in response to the petition to make the foreign judgment executory?
2.) Was the trial judge's finding that there was no extrinsic fraud in procurement of the foreign judgment manifestly erroneous?
3.) Did the trial misinterpret the foreign judgment as it pertains to judicial interest?
This dispute arose over a contract to install heating and air conditioning equipment in an apartment building in Atlanta, Georgia. Donald S. Moffatt-White House Apartments, a Louisiana limited partnership whose general partner is Donald S. Moffatt, is the owner of the Atlanta building which contracted for the work with Joseph R. Keenan Company and Joseph R. Keenan. When problems arose between White House and Keenan over performance of the contract, Keenan initiated an arbitration proceeding.
In the demand for arbitration Keenan recited that White House had failed to make payments on the contract, and sought further damages for breach of contract and financing expenses. In its answer to this demand, White House alleged that Keenan had breached the contract in failing to properly install a workable system meeting the specifications of the contract, and sought damages from Keenan for expenses occasioned by the defective work. After a full hearing at which all parties appeared, the arbitration panel awarded Keenan $481,850 in full settlement of all claims submitted for arbitration, and relieved Keenan from any further work on the premises.
The arbitration award was rendered on September 27, 1985, and was received by White House on October 9, 1985. On October 28, 1985, White House filed a Request for Clarification, Reconsideration and Modification with the arbitration panel, which request was denied on December 28, 1985.
Meanwhile, on November 12, 1985, Keenan filed in the Superior Court of Fulton County, Georgia, a Motion for confirmation of the arbitration award, and the court set a hearing on the matter for January 13, 1986. On the day of the hearing, White House appeared and urged a Motion to Vacate or Modify [the] arbitration award, again alleging breach of contract and failure to properly complete the work on Keenan's part. It was further alleged that the arbitration award was defective in that it did not comply with the law and evidence, and that the panel was biased. The trial judge ruled that this motion to vacate or *1143 modify the award was untimely under Georgia law in that it came more than three months after receipt of the original award by White House. He therefore issued a judgment, confirming the award in Keenan's favor. White House then requested a new trial in the matter which was denied by a second judgment of February 27, 1986. White House did not appeal or seek further review of the matter in the Georgia courts.
On September 2, 1986, Keenan filed in the Louisiana district court an ex parte petition to enforce the Georgia judgment, pursuant to La.R.S. 13:4242. By way of answer, White House urged that the judgment sought to be enforced was invalid on due process and equal protection grounds. In support of this claim, it contended that the arbitrators were biased and went beyond the law and evidence in making the award. It also alleged fraud in the procurement of the judgment confirming the award. Finally, by way of a reconventional demand, it sought damages from Keenan for failure to properly complete the work as per the contract.
In response to these pleadings Keenan filed an exception of res judicata, as well as a motion to strike the answer and reconventional demand on the grounds that these pleadings were improper procedural responses to a petition to have a foreign judgment made executory under La.R.S. 13:4241 et seq.
At commencement of trial of the matter, the trial judge struck the reconventional demand as being an unauthorized pleading under La.R.S. 13:4241 et seq. He denied the exception of res judicata as to the answer, however, apparently reasoning that under the "full faith and credit" clause, U.S. Const. art. 4, § 1, a foreign judgment may be attached for extrinsic fraud in the procurement of that judgment. After conclusion of the trial, the trial judge found that there was no showing of extrinsic fraud and therefore, judgment was entitled to full faith and credit. White House now appeals.
The first issue is whether the trial judge erred in striking the reconventional demand of White House. Appellant argues that the procedure established by La.R.S. 13:4241 et seq., is an ordinary proceeding, and therefore that a reconventional demand is permissable as in any other ordinary proceeding, relying on Stephens Photo, Inc. v. Southern Portraits, Inc., 424 So.2d 1100 (La.App. 1st Cir.1982). In that case, the action to enforce the foreign judgment was brought under La.Code Civ.Pro. art. 2541, which provides an alternative procedure to that provided in the more recently enacted Uniform Enforcement of Foreign Judgments Act (UEFJA), La.R.S. 13:4241, et seq. That court reasoned that because art. 2541 actions are ordinary proceedings, no legal bar exists to the filing of a reconventional demand, "provided the matters therein alleged were not litigated in the [foreign state] proceeding" (at 1101). White House urges that by analogy, reconventional demands should likewise be permitted in actions brought under La.R.S. 13:4241 et seq.
Kennan urges to the contrary that proceedings brought under the Louisiana version of the UEFJA are sui generis, being neither ordinary, summary nor executory. He urges therefore, that the only procedural devices available to a defendant in such an action are those set forth in the statute itself, and that a reconventional demand is not among them. Appellee urges alternatively, that even if reconventional demands are permitted, the instant pleading was nonetheless barred by res judicata.
Because we agree that the matters urged in the reconventional demand were litigated in the Georgia proceeding, and are thus res judicata here, we need not resolve the question of whether such a demand would otherwise be permitted under our version of the UEFJA. It has long been established that the full faith and credit clause of the federal constitution is based on the principal of res judicata. As stated by the United States Supreme Court, in Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943):
From the beginning this court has held that these provisions [the full faith and credit clause and 28 U.S.C. 1738] have *1144 made that which has been adjudicated in one state res judicata to the same extent in every other.
. . . . .
These consequences flow from the clear purpose of the full faith and credit clause to establish throughout the federal system the salutary principle of the common law that a litigation once pursued to judgment shall be as conclusive of the rights of the parties in every other court as in that where the judgment was rendered, so that a cause of action merged in a judgment in one state is likewise merged in every other.... Because there is a full faith and credit clause a defendant may not a second time challenge the validity of the plaintiff's right which has ripened into a judgment....
This principal was also recognized in Stephens Photo Inc., supra, though in less concise language.
In the case before us, White House urged in its reconventional demand the same matters that it had urged by way of defenses and counterclaims in both the arbitration proceeding and before the Georgia court. To permit these matters to be relitigated in our courts, would in this court's opinion be in direct conflict with the "full faith and credit" clause of the United States Constitution, art. 4, § 1. We therefore affirm the action of the trial court in striking the reconventional demand.
The second question here is whether the trial court committed manifest error in finding that there was no extrinsic fraud in procurement of the Georgia judgment. The general rule is that where it is shown that a foreign judgment has been obtained through fraud which is extrinsic to the action itself, the full faith and credit clause does not require recognition of that judgment. The extrinsic fraud rule was succinctly stated in Fidelity Standard Life Insurance Co. v. First National Bank and Trust Co. of Vidalia, Ga., 382 F.Supp. 956 (S.D.Ga.1974), as follows:
[T]he impeachment of a foreign judgment is limited to existence of fraud that is extrinsic in its nature, that is, fraud preventing one from having a real contest of the suit based on conduct or activities outside of the court proceedings themselves. See 47 Am.Jur.2d Judgments § 1239; 46 Am.Jur.2d § 710, 826. Instrinsic fraud is unavailing as the basis of collateral attack. It consists of fraudulent acts that pertain to an issue involved in the original action which was litigated or could have been litigated therein.
The answer in the present case contains a number of allegations of intrinsic fraud, such as false affidavits, as well as allegations of bias on the part of the arbitrators which resulted in a judgment claimed by White House to be excessive and unconscionable. White House urges that these allegations, if proved, would be sufficient to nullify the judgment for fraud or ill practices pursuant to article 2004 of the La.Code Civ.Pro. However, the trial court refused to admit evidence on these issues on the grounds that these matters were previously litigated in Georgia. We hold that this ruling was correct on grounds of the full faith and credit clause, as previously explained.
White House did, however, raise one issue of extrinsic fraud in procurement of the judgment in its answer, and a full hearing was properly allowed on this question.
The facts elicited at trial of this matter were these. When White House first received notice of the arbitration award, its attorney, Edwin Ceccarelli, sought advice on how further to proceed from another attorney, Fielder Martin, a reputed specialist in arbitration law. Ceccarelli testified that Martin advised him that by filing a request with the arbitration panel for clarification, reconsideration and modification, all times for seeking court review of the decision of the panel were tolled. Assuming that Martin was to take over the case, and relying on his representations as to time, Ceccarelli took no further action. On about January 8, 1986, Martin informed Ceccarelli and Moffatt (White House's general partner) that he was withdrawing because of a conflict of interest. At that *1145 point, Ceccarelli consulted with another arbitration specialist, John Hinchey. It is not clear from the record exactly when Hinchey came into the case. However, no pleadings were filed on behalf of White House until January 13, 1986, the day of the hearing on Keenan's motion for confirmation of the arbitration award. It was subsequently determined by the Georgia court that the three month period for seeking review of the arbitration award was not in fact tolled by the request for reconsideration with the arbitration panel, and judgment was entered in Keenan's favor in the amount of that award.
It was further revealed at trial that Keenan owed money to another construction firm owned by Billy Pitts. Pitts was a client of Fielder Martin, and apparently his disapproval of Martin's representation of White House was what persuaded Martin to withdraw from that representation because of a potential conflict of interest. It was the contention of White House that Keenan got Pitts to pressure Martin to withdraw to facilitate collection of the award. Keenan admitted discussing the arbitration procedure with Pitts because the latter had such a proceeding pending and sought this information. He denied that he had ever spoken to Martin about White House or suggested that Pitts try to influence Martin in any way. In deposition Martin also denied ever speaking to Keenan about the matter, but did admit that Pitts was not pleased about his representing White House.
On this evidence, the trial judge found that there was no showing made that Keenan was responsible in any way for the failure of White House to timely seek court review of the arbitration award, and had thus perpetrated no extrinsic fraud, in procurement of the judgment. We find no manifest error in this factual determination.
White House also urges in this regard that because of Martin's advice, it has been denied its day in court, and therefore enforcement of the judgment would violate its due process rights, and be unconscionable under La.Code Civ.Pro. art. 2004. This argument fails for two reasons. First, White House participated fully in the arbitration proceeding and thus had an opportunity to fully defend the action there. See Tugendrajch v. Heifetz, 560 F.Supp. 906 (S.D.N.Y.1983). Second, Ceccarelli testified that a considered decision was made not to appeal the lower court's judgment in Georgia because both he and Hinchey agreed that it would not only be futile, but might result in imposition of attorney fees and penalties if found to be frivolous by the appellate court. What it in effect seeks here is to have this court order relitigation of the entire matter, including subsequent appellate review, when it deemed such review futile and possibly frivolous in Georgia. Under the full faith and credit clause we are simply prohibited from granting such relief.
The final issue involves the trial court's interpretation of the Georgia judgment as it pertains to interest. This problem arose because the Georgia court issued several amended judgments which made substantive changes in the rate and amount of interest owing under Georgia law. The final judgment sought to be enforced here is styled Order Restating Judgment, and is dated August 28, 1986. This document states that it incorporates the original judgment of January 13, 1986, as well as two subsequent amended judgments, in order to facilitate enforcement in a foreign court. Taking all of the judgments together it is clear to this court that two types of interest are involved. The first is conventional interest awarded by the arbitration panel which began to accrue upon receipt of the award by White House. The second is judicial and began to accrue upon rendition of the judgment confirming the award. The final paragraph of the judgment is as follows:
"Accordingly, this court finds that the award should be confirmed and that judgment should be entered thereon in favor of Joseph R. Keenan Company, Joseph R. Keenan, and William T. Brookman, and against Whitehouse Apartments Partnership (also known as White House Apartments Partnership) and *1146 Donald S. Moffatt, General partner, in the sum of $485,113.60 principal plus $9,024.88 interest as of January 13, 1986, with interest to accrue on the judgment at the rate of 12 percent (12%) per annum until paid.
So ordered this 28th day of August, 1986."
Clearly the $9,024.88 figure represents conventional interest on the arbitration award up to January 13, 1986, the date that that award became a judgment of the court, thereby triggering judicial interest at 12% per annum. It is the opinion of this court that the judgment can have no other meaning than that judicial interest began on January 14, 1986, and we therefore amend the judgment to so provide.

DECREE
The judgment of November 26, 1986, is affirmed in all aspects.
The judgment of June 10, 1987, is hereby vacated and amended as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that interest due on the Foreign Judgment made executory on November 26, 1986 in these proceedings commenced from the date of the Foreign Judgment, which was January 13, 1986;"
In accordance with the above decree, the District Court shall release the $36,544.20, plus accrued interest from the court's registry to Joseph R. Keenan Company et al. plaintiffs-appellees herein.
Accordingly, the judgment is affirmed in part and amended in part. All costs of this appeal to be paid by appellants.
AFFIRMED IN PART, AMENDED IN PART, AND RENDERED.