587 So.2d 771 (1991)
In re STATE of Louisiana (Faye Jean Fontenot), Appellant,
v.
Gerald L. FONTENOT, Appellee.
No. 22325-CA.
Court of Appeal of Louisiana, Second Circuit.
September 30, 1991.
Rehearing Denied October 24, 1991.
*772 Paul J. Carmouche, Dist. Atty., Tommy J. Johnson, Asst. Dist. Atty., Shreveport, for appellant.
Paul W. Cary, Shreveport, for appellee.
Before MARVIN, NORRIS, LINDSAY, BROWN and STEWART, JJ.
LINDSAY, Judge.
The state appeals from a juvenile court judgment which refused to give full faith and credit to a Georgia judgment for child support arrearages of more than $28,000. For the reasons assigned below, we reverse and remand.[1]

FACTS
Faye Jean Fontenot and Gerald L. Fontenot were married in 1964 in the state of Georgia. Of this union two children were born: Franklin Todd Fontenot (DOB May 24, 1967), and Jason Lynn Fontenot (DOB February 11, 1970). A final judgment of divorce was rendered in Georgia in 1972. Under the terms of this judgment, the defendant, Gerald Fontenot, was directed to pay child support of $25.00 per week per child. (The judgment also denied him any visitation rights.) The defendant subsequently moved to Caddo Parish, Louisiana.
The defendant became delinquent in his payment of the child support. Consequently, the District Attorney of Cobb County, Georgia, transmitted to Louisiana a claim for arrearages and support on behalf of Mrs. Fontenot under the Uniform Reciprocal Enforcement of Support Act (URESA). (Mrs. Fontenot and the children lived in Smyrna, Georgia.) This transmittal was received in Caddo Juvenile Court on April 4, 1983. The documents alleged that the defendant owed arrearages of $29,061.55.
In response to the allegations of arrearages contained in the Georgia transmittal, the defendant filed a peremptory exception of prescription, asserting that under Louisiana law either the three-year prescription for child support or the ten-year prescriptive period for money judgments barred recovery of some of the child support payments. During a hearing on May 26, 1983, *773 the parties stipulated that any arrearages that had accrued three years before that date had prescribed. The court sustained the exception of prescription on that basis. As part of the agreement between the parties, it was decided that the state would make no effort to seek the remaining arrearages at that time in order to afford the defendant a chance to establish visitation with the children. Subsequently, in June, 1983, the Caddo Parish Juvenile Court rendered judgment directing that the defendant pay child support of $25 per week per child or a lump sum of $216.67 per month to the DHHR. The judgment also stated that the right to claim arrearages was reserved to Mrs. Fontenot "with exception of the arrears as prescribed."
In 1985, the defendant sought and received a modification of the support order based upon the older son having reached the legal age of majority. Thereafter, the amount of child support was set at $25.00 per week for the younger son.
In February 1986, a hearing was held pursuant to the state's motion to set the previously specified arrearages. Mrs. Fontenot claimed arrearages of $26,350.26. However, the court referred to the prior exception of prescription which the court had sustained. The court then fixed the total arrearages at $7,800 (or $25 per week per child for 3 years). However, because the elder son was a major, the court held that the mother had no right to seek arrearages on his behalf.[2] Thus, a judgment was signed awarding arrearages in the amount of $3,900 for the younger son. There was no appeal from this judgment.
In July, 1986, the state moved to cancel $988 in arrearages because the State of Georgia had intercepted $988 of the defendant's federal income tax refund. The motion was granted.
In February, 1988, the defendant filed a motion to terminate the support order for the younger son because he had reached the full age of majority. The support order was terminated effective February 11, 1988. At that time, arrearages were fixed at the sum of $2,887.00, and the defendant was ordered to pay $75.00 per month as of April 1, 1988, to apply on the arrearages. The judgment called for the defendant to receive credit for any prior IRS intercepts.
In May of 1989, the defendant filed a motion to suspend and terminate the payments on the arrearages. The defendant asserted that he had paid $1,401.00 to the DHHR and that $1,417.00 had been paid through the IRS intercept program. By the defendant's calculations, he owed only $69.00 on the arrearages. The state argued that the defendant was not entitled to credit for the IRS intercepts because that money was intercepted by the State of Georgia to be used towards a Georgia judgment for arrearages of $28,266.86. The trial court set arrearages at $69.00 and ordered that the case be dismissed upon the payment of $69.00 and subject to the receipt of $514.00 from the IRS intercept to Georgia. On September 27, 1989, the court signed a judgment dismissing the URESA judgment with prejudice.
At about the same time, an action against the defendant was apparently pending in the Superior Court of Cobb County, Georgia, in which the defendant was adjudged to owe in excess of $28,000 in past due child support. The record in this case indicates that on September 19, 1989, the Superior Court in Cobb County, Georgia, finding that the defendant had been personally served with process and that the court had jurisdiction over him, rendered judgment for past due child support in the amount of $28,266.86. The Georgia court also found the defendant to be in contempt for failure to pay.
On January 8, 1990, an interstate child support enforcement transmittal was filed in the Juvenile Court of Caddo Parish, Louisiana. The transmittal from the Georgia Child Support Recovery Unit sought enforcement of the Georgia judgment and collection of the arrearages in the amount of $28,266.86 through a wage withholding *774 order. It attached copies of the Georgia judgment dated September 19, 1989. On February 6, 1990, the defendant filed a petition to stay service (interstate). The defendant alleged error in the amount of current support owed; error in the amount of arrearages that had accrued; that the court or agency which issued the support order lack personal jurisdiction over him; and the prescriptive period precluded enforcement of all or part of the arrearages. On February 22, 1990, a notice of proposed income assignment order (interstate) was filed by the Louisiana DHHR. It proposed that the defendant pay $25.00 per week on the arrearages.
On March 7, 1990, the defendant filed a peremptory exception of res judicata, claiming that the issue of arrearages had already been litigated. On March 20, 1990, the trial court sustained the exception of res judicata. It ordered that the "notice of proposed income assignment order (interstate)" be dismissed with prejudice.
The state appeals. It alleges that the trial court erred in not recognizing the September, 1989, judgment of the state of Georgia and giving it full faith and credit.

LAW
Under the U.S. Constitution, Article 4, Section 1, a court in Louisiana must give full faith and credit within the state to a judgment of a court in a sister state unless the court in the foreign forum lacked jurisdiction. In a suit for the recognition of a foreign judgment, the only issue in the foreign proceeding which a Louisiana court may review is the question of the foreign court's jurisdiction over the parties. The relevant law to determine whether the foreign court had jurisdiction is the law of the forum state rendering the original judgment. McMillan v. Noble, 538 So.2d 714 (La.App. 4th Cir.1989), writ denied 543 So.2d 19 (La.1989), cert. denied 493 U.S. 992, 110 S.Ct. 540, 107 L.Ed.2d 538 (1989). Additionally, there is jurisprudence to the effect that where a foreign judgment is obtained through extrinsic fraud, the full faith and credit clause does not require recognition of that judgment. J.R. Keenan Company v. White House Apartments, 517 So.2d 1141 (La.App. 5th Cir.1987), writ denied 520 So.2d 750 (La.1988).
A valid judgment rendered in one state will be enforced in a sister state although action on the original claim was barred by the statute of limitations of the sister state at the time when the judgment was rendered. Also, a valid judgment rendered in one state may be denied enforcement in the sister state if suit on the judgment is barred by the sister state's statute of limitation applicable to judgments. Restatement (Second) Conflicts of Law § 118, at 341-342 (1971).[3]
A foreign judgment for past due support rendered by a court that had jurisdiction over the parties and the subject matter may not be denied full faith and credit by a Louisiana court because of the Louisiana prescriptive period for seeking arrearages of alimony and child support. Broday v. Broday, 360 So.2d 645 (La.App. 3d Cir.1978); Hill v. Hill, 394 So.2d 676 (La.App. 4th Cir.1981), writ denied 400 So.2d 669 (La.1981), cert. denied 454 U.S. 863, 102 S.Ct. 321, 70 L.Ed.2d 162 (1981).
The Louisiana law on prescriptive periods for foreign judgments is established in LSA-C.C. Art. 3501. It provides, in relevant part, that: "An action to enforce a money judgment rendered by a court of another state ... is barred by the lapse of ten years from its rendition; but such a judgment is not enforceable in this state if it is prescribed, barred by the statute of limitations, or is otherwise unenforceable under the laws of the jurisdiction in which it was rendered."
In the instant case, the proceedings filed in Louisiana in 1990 were filed pursuant to LSA-R.S. 46:236.4, which provides for interstate enforcement of support by income assignment. The purpose of the statute is, *775 in relevant part, "to enhance the enforcement of support obligations by providing a quick and effective procedure for the withholding of income derived in this jurisdiction to enforce a support order of another jurisdiction...." LSA-R.S. 46:236.4(A)(1). The statute defines "support order" as "any order, decree, or judgment for the support, or for the payment of arrearages on such support, of a child ... issued by a court ... of this or another jurisdiction...." LSA-R.S. 46:236.4(A)(2)(k). The statute further provides: "The remedy herein provided is in addition to, and not in substitution for, any other remedy otherwise available to enforce a support order of another jurisdiction...." LSA-R.S. 46:236.4(B).
The Louisiana statutory scheme for interstate income withholding also provides that once a prima facie case has been established, the obligor may raise certain defenses. These include a mistake of fact that is not res judicata, concerning such matters as an error in the amount of current support owed or arrearages that had accrued (apparently referring to arrearages not reduced to judgment), mistaken identity of the obligor, or error in the amount of income to be withheld; lack of personal jurisdiction over the obligor by the court or agency issuing the support order filed under this section; the support order being obtained by fraud; and the prescriptive period under Paragraph (K)(3) of R.S. 46:236.4 precluding enforcement of any or all parts of the arrearages. See LSA-R.S. 46:236.4(F)(2).

DISCUSSION
The state contends that the trial court erroneously thought that the Georgia judgment for which enforcement was sought was a URESA judgment. The state maintains that it was seeking enforcement of a civil judgment, which had not been rendered in an action under URESA. The state asserts that the action presently before the court was brought pursuant to LSA-R.S. 46:236.4. Therefore, the state argues that the exception of res judicata should not have been sustained and the Georgia judgment should have been given full faith and credit.
The defendant maintains that the trial court properly sustained the exception of res judicata. He contends that these were the same proceedings between the same parties based upon the same underlying facts and seeking to obtain the same object of demand.
As previously noted, full faith and credit to the judgment of a sister state may only be denied in certain limited instances, such as the lack of jurisdiction of the rendering court and extrinsic fraud. We note that these are included as defenses in LSA-R.S. 46:236.4(F)(2)(b) and (c). Although the statute enumerates two other defenses, a mistake of fact not res judicata and prescription of an action to claim arrearages, we find that these defenses do not allow the defendant to relitigate the amount of arrearages when the court of a sister state has reduced the child support arrearages to a final judgment which is entitled to full faith and credit.[4]
The state argues that the URESA proceedings constituted only an additional remedy for the collection of child support, and that the URESA proceedings have no effect upon the enforcement of the Georgia *776 judgment rendered in September of 1989. The state has directed our attention to several Louisiana cases wherein a URESA judgment was rendered which provided for payments in amounts less than those set in the original judgment of another state. The courts in those cases held that the URESA judgment could not modify the original support order because the URESA proceedings were merely in addition to, and not in substitution for, the original proceedings. See Trice v. Trice, 428 So.2d 1265 (La.App. 3d Cir.1983); Wade v. Wade, 552 So.2d 1279 (La.App. 5th Cir.1989).[5]
The basic question presented is whether the full faith and credit to which the Georgia judgment is entitled can be affected by the previous URESA proceedings. Apparently it cannot. See Idaho Department of Health and Welfare v. Holjeson, 42 Wash. App. 69, 708 P.2d 661 (1985), review denied 105 Wash.2d 1005 (1986). In Holjeson, supra, the Holjesons were divorced in Idaho in 1967. Mrs. Holjeson obtained custody of their three children and, apparently, a child support order. Mr. Holjeson thereafter moved to the State of Washington. His ex-wife instituted URESA proceedings to enforce his child support obligations. Pursuant to the URESA action, Mr. Holjeson and the Washington authorities entered into a stipulated order in 1982 as to the amount of the arrearages owed. Mrs. Holjeson later filed an action in Idaho for back support. Mr. Holjeson appeared and contested that action. A judgment of more than $38,000 was rendered against him. He appealed. Mrs. Holjeson sought enforcement of the Idaho judgment in Washington. Mr. Holjeson dismissed his appeal in Idaho. He then filed a motion in the Washington court, seeking to vacate the Idaho judgment, raising the Washington statute of limitations and the doctrine of res judicata as defenses to the enforcement of the Idaho judgment. The Washington trial court denied this motion. On appeal, the Washington Court of Appeal affirmed. In so doing, it relied upon Roche v. McDonald, 275 U.S. 449, 48 S.Ct. 142, 72 L.Ed. 365 (1928), to hold that "Mr. Holjeson had the opportunity to rely upon Washington's statute of limitation and the alleged res judicata effect of the previous order for arrearages under U.R.E.S.A., when the matter was litigated in Idaho."
In Roche v. McDonald, supra, a money judgment against McDonald was rendered in Washington in 1918 in a dispute between Washington residents. McDonald then moved to Oregon. Roche obtained an Oregon judgment against McDonald in 1924 based upon the Washington judgment more than six years after rendition of the Washington judgment. Thereafter, Roche brought suit against McDonald in Washington on the Oregon judgment. McDonald raised as a defense Washington's six year statute of limitations for enforcement of judgments. The court found in favor of McDonald. However, the U.S. Supreme Court reversed, finding:
The court of Oregon had jurisdiction of the parties and of the subject matter of the suit. Its judgment was valid and conclusive in that State. The objection made to enforcement of that judgment in Washington is, in substance, that it must there be denied validity because it contravenes the Washington statute and would have been void if rendered in a court of Washington; that is, in effect, that it was based upon an error of law. It cannot be impeached upon that ground. If McDonald desired to rely upon the Washington statute as a protection from any judgment that would extend the force of the Washington judgment beyond six years from its rendition, he should have set up that statute in the court of Oregon and submitted to that *777 court the question of its construction and effect. And even if this had been done, he could not thereafter have impeached the validity of the judgment because of a misapprehension of the Washington law. In short, the Oregon judgment, being valid and conclusive between the parties in that State, was equally conclusive in the courts of Washington, and under the full faith and credit clause should have been enforced by them.
In the instant case, the defendant can only collaterally attack the Georgia judgment on a few specific grounds, lack of personal jurisdiction, extrinsic fraud, or the running of prescription for enforcement of foreign judgments. The record displays no evidence of extrinsic fraud or that the prescriptive period for the enforcement of foreign judgments under LSA-C.C. Art. 3501 has accrued. Prior adjudication of the issue of prescription of the arrearages cannot be raised at this time in this state. If the defendant wished to plead the alleged res judicata effect of that adjudication or the Louisiana prescriptive period for arrearages, he had the opportunity to do so in the Georgia proceedings. He did not take this opportunity and, therefore, the Georgia judgment may be enforceable in this state.
However, we observe from the record that when this action was filed in the Caddo Juvenile Court, the defendant challenged the Georgia court's personal jurisdiction over him. There is a general presumption that a judgment of a sister state is valid, and there is a heavy burden of proof upon the party attacking the judgment to show by clear and positive proof that the rendering court lacked jurisdiction. Holden v. Holden, 374 So.2d 749 (La.App. 3d Cir.1979); McMillan v. Noble, supra. The defendant is entitled to raise this defense in the juvenile court and present whatever evidence he has on the issue. Inasmuch as the juvenile court's action in sustaining the defendant's exception of res judicata precluded the taking of evidence on this point, we remand this matter for further proceedings.[6]

CONCLUSION
The judgment sustaining the plea of res judicata is reversed. The matter is remanded to the Juvenile Court of Caddo Parish for further proceedings consistent with this opinion. Costs are assessed against the defendant.
REVERSED AND REMANDED.
NORRIS, J., dissents.
BROWN, J., dissents with reasons.
BROWN, Judge, dissenting.
In 1972 a court in Georgia granted judgment in favor of Mrs. Fontenot and against Mr. Fontenot for monthly child support. This child support was not paid until 1983 when Mrs. Fontenot filed an action under URESA in Louisiana seeking enforcement of the entire Georgia decree. The Louisiana court granted judgment ordering monthly child support as set out in the 1972 Georgia case and Mr. Fontenot paid this support until his children reached majority. Additionally the Louisiana court determined the amount of arrearages due from 1972 to 1983 and set up a payment plan. In 1989 the Louisiana court determined in a contradictory hearing that all arrearages were paid and dismissed the URESA judgment. Mrs. Fontenot did not appeal any of these rulings by the Louisiana court.
After the dismissal in the Louisiana court, Mrs. Fontenot obtained a default judgment in Georgia declaring that Mr. Fontenot owed $28,266.86 for arrearages due between 1972 and 1983 based upon the 1972 Georgia award. Mrs. Fontenot then filed in the same Louisiana URESA proceedings and before the same judge a motion to collect this new Georgia judgment. The Louisiana court correctly found that the issue of payment of the arrearages on *778 the 1972 Georgia judgment was res judicata.
One purpose of the Full Faith and Credit Clause is to bring an end to litigation. As the U.S. Supreme Court noted in Riley v. New York Trust Co., 315 U.S. 343, 62 S.Ct. 608, 86 L.Ed. 885 (1942):
Were it not for this full faith and credit provision, so far as the Constitution controls the matter, adversaries could wage again their legal battles whenever they met in other jurisdictions. Each state could control its own courts but itself could not project the effect of its decisions beyond its own boundaries."
The majority opinion is irreconcilably at odds with this principle of finality. Between 1983 and 1989 Mrs. Fontenot collected both current child support and an amount to pay off the arrearages that had accumulated from 1972 to 1983. Mrs. Fontenot sought and obtained by default a judgment in Georgia on the same issue concerning arrearages which she seeks now to collect in Louisiana. It is grossly unfair that Mrs. Fontenot having chosen Louisiana as the forum for determining the amount of back due support should be given the additional advantage of a second adjudication on the same facts after collecting the Louisiana award.
Additionally, the majority decision has withdrawn the assurance Mr. Fontenot received from the Louisiana court that its judgment was conclusive as to his obligation. Under the majority's opinion, what Mr. Fontenot paid on arrearages as ordered by the trial judge will now be collected a second time.
A major purpose of the Full Faith and Credit Clause is to act as a nationally unifying force. Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948). Both URESA and interstate enforcement of support by income assignment were enacted for the same unifying purpose. The majority opinion substantially undercuts this unifying function.
The ascertainment of the amount owed for arrearages on the 1972 Georgia award and its payment were factual matters. In Thomas v. Washington Gas Light Co., 448 U.S. 261, 100 S.Ct. 2647, 65 L.Ed.2d 757, (1980), the U.S. Supreme Court restated, "the unexceptionable full faith and credit principle that resolutions of factual matters underlying a judgment must be given the same res judicata effect in the forum State as they have in the rendering State." Unquestionably, the factual determinations of the Louisiana court were entitled to collateral-estoppel effect in Georgia.
The factual issue of the amount of arrearages that was owed between 1972 and 1983 was litigated by contradictory hearings on several occasions in Louisiana with a final determination that all amounts owed were paid. Mrs. Fontenot did not appeal any of these rulings. After the Louisiana court dismissed further action, the Georgia court by default made its factual ruling on the same question. Through this circumvention Mrs. Fontenot now seeks to enforce the 1989 Georgia award in the same Louisiana URESA proceeding and before the same judge that found Mr. Fontenot had paid this obligation in full.
Mrs. Fontenot's actions demonstrates a manipulation of the URESA laws which is impermissible. Goldstein v. Goldstein, 409 So.2d 1245 (La.App. 4th Cir.1982), recognized that a "defendant can, therefore, claim credit for the amounts paid under URESA prior to the Maryland judgment for arrearages...." The majority's inflexibility has denied Mr. Fontenot his obvious right to claim credit for what he paid on arrearages in accordance with the Louisiana court order and has allowed Mrs. Fontenot to unjustly recover twice.
URESA and interstate enforcement of support by income assignment are recent legal developments. The 1928 case Roche v. McDonald, 275 U.S. 449, 48 S.Ct. 142, 72 L.Ed. 365 (1928), relied on by the majority, is inapplicable to the method employed by plaintiff to manipulate these reciprocal laws. Roche dealt with the issue of the applicability of Washington's statute of limitations and not the issue presented in this case.
In the instant case Mrs. Fontenot and Georgia used Louisiana as the forum to *779 enforce its 1972 judgment and chose not to appeal the decisions of the Louisiana court. The 1989 Georgia judgment was based upon this same 1972 award. The Louisiana court correctly found it had rendered a final judgment on the claims arising from the 1972 Georgia award. Further, the Louisiana court determined that Mr. Fontenot had paid in full his obligation and res judicata was applicable to this issue. Therefore the Georgia judgment was correctly found to have been satisfied. Any other ruling would be unjust and not give full faith and credit to the Louisiana ruling. The majority's requirement that the defense of res judicata be pursued only in Georgia is unreasonable.
Further, since defendant pled the ten year prescriptive period for the enforcement of foreign judgments in the 1983 Louisiana litigation, it should apply to the arrearage of $3,937 originally set in the 1972 Georgia decision. At the very least, the majority should reduce the award by this amount.
For these reasons I dissent and would affirm the ruling of the trial court.
APPLICATION FOR REHEARING
Before MARVIN, NORRIS, LINDSAY, BROWN and STEWART, JJ.
Rehearing Denied.
NOTES
[1] This case was assigned to a five-judge panel pursuant to LSA-Const. Art. 5, § 8(B).
[2] This was incorrect. The mother in whose favor a periodic child support order was rendered is the proper party to seek arrearages which became due during the minority of a now-major child. Halcomb v. Halcomb, 352 So.2d 1013 (La.1977).
[3] Restatement (Second) Conflicts of Law § 103-121 sets forth various defenses which may generally be raised in opposition to a foreign judgment. However, none of these would allow an obligor to relitigate the amount or other merits of the judgment. See also Matson v. Matson, 333 N.W.2d 862 (Minn.1983).
[4] In Goldstein v. Goldstein, 409 So.2d 1245 (La. App. 4th Cir.1982), a Maryland judgment for child support arrearages was given full faith and credit in Louisiana. The court stated that the defendant "can ... claim credit for the amounts paid under URESA prior to the Maryland judgment for arrearages.... (Emphasis ours.)" However, a reading of Goldstein, supra, and its companion case, Schniebolk v. Goldstein, 409 So.2d 1250 (La.App. 4th Cir.1982), makes it clear that this language was dicta. Our examination of the facts, dates and sums set forth in these two cases leads to the conclusion that the Maryland court had already considered the amount paid under URESA and given the defendant due credit in computing its judgment.

See also Fleming v. Fleming, 49 N.C.App. 345, 271 S.E.2d 584 (1980), in which a foreign judgment setting arrearages for a specific time period was deemed conclusive for that period even though it was unclear whether the obligor made certain payments before or after rendition of that judgment. (Those payments made after the judgment would be credited against the arrearages accruing thereafter.)
[5] In the dissent in this case, our brethren suggest that Mrs. Fontenot and the state of Georgia were obligated to appeal the Louisiana court's decisions in the URESA proceedings or thereafter be estopped from pursuing the arrearages again in Georgia. This contention is akin to claiming that acceptance of payments or the request that payments be made under a URESA judgment estops the claimant from seeking benefits due under a previous civil judgment of support of the other state. Such a claim has been consistently rejected on the grounds that the URESA remedies are merely in addition to and not in substitution for any other remedies. Trice, supra.
[6] The defendant also asserted error in the amount of current support owed and in the amount of accrued arrearages. He is, of course, entitled to credit for any amounts paid since the rendition of the 1989 Georgia judgment. However, the amount set forth in that judgment is not susceptible to attack at this juncture. See Fleming, supra; and Matson, supra.