677 So.2d 630 (1996)
Succession of Shirley Hooper WEBB, Plaintiff-Appellee,
v.
Jeffrey WEBB and Alison Webb, Defendants-Appellants.
No. 28411-CA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1996.
Rehearing Denied August 15, 1996.
*631 Michael D. Cucullu, New Orleans, for Appellants.
Frederick L. Miller, Sydney B. Nelson, Shreveport, for Appellee.
Before BROWN, WILLIAMS and GASKINS, JJ.
WILLIAMS, Judge.
In this concursus proceeding, the defendants, Jeffrey and Alison Webb, appeal a trial court judgment finding that the Colorado adoption of their father, Kenneth Winant Webb by Shirley H. Webb ("decedent") was not entitled to full faith and credit in Louisiana. For the following reasons, we reverse.

*632 FACTS
The decedent, Shirley Hooper Webb, was married to Lester Webb, who predeceased her. She did not have any natural children, but her husband had a son, Kenneth Winant Webb, who lived in their household until adulthood. On January 24, 1974, Shirley Hooper Webb executed a will, which made special bequests to her brothers, Fred, William and Theodore Hooper, but if one died prior to the decedent, she devised his share to her stepson, Kenneth Winant Webb, who was also named the residual legatee. The will did not address the disposition of the property in the event that Kenneth Webb predeceased the decedent. The validity of the will is not at issue and the parties have stipulated to its genuineness.
On July 6, 1976, Shirley Webb executed documents in Caddo Parish purporting to adopt Kenneth Winant Webb, a Colorado resident. The next day, an adoption decree was issued by the circuit court in Larimer County, Colorado. Kenneth Webb predeceased Shirley Webb, leaving two children, Jeffrey and Alison Webb ("the Webbs").
On February 16, 1993, Shirley Webb died in Caddo Parish, survived by her brother, William Hooper, and her nieces, Shirley Hooper Harwell, Gai Hooper Williams and Pamela Hooper Mabry ("the Hoopers"). Bette S. Hooper, surviving spouse of decedent's predeceased brother, Theodore, became provisional administratrix of the succession of Shirley Hooper Webb. The Webbs provided the provisional administratrix and the estate's attorney with certified copies of the adoption decree of their father, Kenneth Webb, and laid claim to the decedent's residual estate remaining after fulfilment of the specific bequest to William Hooper.
Surviving members of the Hooper family indicated that they did not have any knowledge of the adoption and that the decedent had a long history of mental illness. However, the provisional administratrix, who is the mother of the decedent's surviving nieces, was notified of the adoption in 1987. Hospital records indicate that on July 6, 1976, the day before the adoption decree was issued, decedent was admitted to Schumpert Medical Center with a diagnosis of psychosis and cerebral arteriosclerosis. In August 1976, she was transferred to Shreveport Manor Nursing Home. The Hooper claimants questioned the validity of the 1976 adoption.
The provisional administratrix then filed a petition for concursus in order to determine the validity of the adoption and the legal heirs of the decedent. The Webbs filed a motion for summary judgment on the issues of the validity of the adoption and prescription. The trial court denied the Webbs' motion for summary judgment. After a hearing, the trial court found that the Colorado adoption of Kenneth Webb was invalid and not entitled to full faith and credit in Louisiana because the Colorado court lacked jurisdiction over the decedent. The Webbs appeal this judgment.

DISCUSSION
The Webbs argue the trial court erred in finding that the Colorado adoption decree is not entitled to full faith and credit in Louisiana because the foreign court lacked personal jurisdiction over Shirley Webb. They contend that because the Colorado court had subject matter jurisdiction over the adoption, any further inquiry is precluded. We disagree.
Under the full faith and credit clause of the U.S. Constitution, Art. 4, § 1, a Louisiana court must give the judgment of another state the same conclusive effect between the parties that the judgment would be given in the state where it was obtained. Anderson v. Collins, 26,142 (La. App.2d Cir. 1/6/95), 648 So.2d 1371; Harrah's Club v. Mijalis, 557 So.2d 1142 (La.App. 2d Cir.1990). An exception to the full faith and credit mandate is recognized when it is shown that the foreign court did not have personal jurisdiction over a party to the proceeding under the jurisdictional laws of the foreign state. Harrah's Club v. Mijalis, supra. Jurisdiction over the person is the legal authority of a court to render a judgment involving a party to an action or proceeding, and must be based upon service of process or the submission of the party to the exercise of jurisdiction over him personally, or his waiver of objections thereto. LSA-C.C.P. Art. 6.
*633 In the present case, the Colorado court's subject matter jurisdiction over adoptions involving Colorado residents is not in dispute. However, a court must also have personal jurisdiction over the parties to a proceeding in order to render valid judgments involving those parties. The record shows that the decedent was not a resident of Colorado and did not have other contacts with that state. Thus, it was appropriate for the trial court to consider whether Shirley Webb, by filing the adoption petition, had validly consented to the Colorado court's exercise of in personam jurisdiction over her.

Prescription
The Webbs argue the trial court erred in denying their motion for summary judgment. They contend that even if the issue of the foreign court's personal jurisdiction over Shirley Webb was an appropriate inquiry, Colorado's statute of limitations bars any jurisdictional attack on adoptions after a period of two years from the date of the final decree.
As stated previously, the relevant law to determine whether the rendering court had jurisdiction is the law of the foreign state. State v. Fontenot, 587 So.2d 771 (La. App. 2d Cir.1991). Colorado law provides that a final decree of adoption shall not be attacked by reason of any jurisdictional or procedural defect after the expiration of two years following the entry of the final decree. CRS 19-5-214 (1987). However, the Colorado statute barring actions against adoptions after two years must not be interpreted as precluding inquiry by our courts into questions involving due process. White v. Davis, 163 Colo. 122, 428 P.2d 909 (1967). Inquiry into a court's exercise of jurisdiction over a non-resident involves analysis of due process requirements. See J. Wilton Jones Co., Inc. v. Touche Ross & Co., 556 So.2d 67 (La.App. 4th Cir.1989). To satisfy due process, the exercise of jurisdiction over a non-resident must be based on some act, related to the cause of action, by which the person purposely avails herself of the privilege of conducting activities within the foreign state. Harrah's Club v. Mijalis, supra; Cobb Industries, Inc. v. Hight, 469 So.2d 1060 (La.App. 2d Cir. 1985). Louisiana courts have recognized and permitted collateral attack on a foreign judgment where the rendering state would have allowed such an attack. Anderson v. Collins, supra.
In the present case, since the decedent did not have contacts with the foreign state, the Colorado court's exercise of jurisdiction must be based on Shirley Webb's act of filing the adoption petition. The due process consideration involves the question of whether the decedent possessed the capacity to purposefully consent to foreign jurisdiction. In light of the Colorado Supreme Court's decision in White v. Davis, it appears that Colorado would allow an inquiry into the decedent's capacity to consent to that state's jurisdiction, despite the statutory time limitation imposed on adoption challenges. Therefore, the Hoopers' contention that the Colorado court lacked personal jurisdiction is not barred by the law restricting attacks on the validity of adoptions. We cannot say that the trial court erred in denying the motion for summary judgment. This assignment of error lacks merit.

Capacity
The Webbs argue the trial court erred in finding that Shirley Webb lacked the capacity to enter into the adoption of her stepson. They assert that the Hooper claimants failed to meet their burden of proof to show that the Colorado court lacked jurisdiction.
There is a general presumption that a judgment of a sister state is valid, and there is a heavy burden upon the party attacking the judgment to show by clear and positive proof that the rendering court lacked jurisdiction. State v. Fontenot, supra. The status of a natural person, including the capacity to enter into juridical acts, is governed by the law of that state whose policies are most significantly involved with the particular issue in question. The factors considered include the relationship of the state to the dispute, the parties and the person whose status is at issue. See LSA-C.C. Art. 3519.
Here, Louisiana has a significant relationship to the dispute, the adoption petition was executed in this state and the person *634 whose status is at issue was a Louisiana resident during her lifetime. Accordingly, we will apply Louisiana law in evaluating the evidence of decedent's capacity to submit to foreign jurisdiction.
The Hooper claimants bear the burden to clearly and positively demonstrate that the foreign court lacked jurisdiction. They argue that Shirley Webb was not mentally competent to understand the nature of the adoption petition, which was the basis for the Colorado court's jurisdiction over her. Evaluating a person's mental capacity to adopt involves a similar analysis as that employed in determining an individual's donative or testamentary capacity.
In determining testamentary capacity the question is whether the testator understood the nature of the disposition and appreciated its effects. Succession of Hamiter, 519 So.2d 341 (La.App. 2d Cir.1988); LSA-C.C. Art. 1477. There is a strong presumption in favor of testamentary capacity. Succession of Sturgis, 516 So.2d 1293 (La. App. 2d Cir.1987). The party alleging incapacity has the burden of proving lack of capacity at the time the will was executed by clear and convincing evidence. Succession of Braud, 94-0668 (La.App. 4th Cir. 11/17/94), 646 So.2d 1168; Succession of Hamiter, supra. In order to prove a matter by clear and convincing evidence, the party must demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Succession of Braud, supra. The determination of testamentary capacity is a question of fact and the trial judge's findings will not be disturbed unless clearly wrong. Succession of Hamiter, supra.
In the present case, the Hoopers attempted to meet this difficult burden of proof by presenting medical records and the testimony of Dr. Erle Harris. The records from Brentwood Hospital and Central Louisiana State Hospital indicate that Shirley Webb was admitted because she appeared confused, disoriented and delusional. Her condition during these stays improved and she was released and received out-patient treatment at the Shreveport Mental Health Center. In April 1976, Shirley Webb was evaluated at Central State Hospital and discharged because she appeared able to function on an out-patient basis.
The Hoopers' psychiatric expert, Dr. Harris, testified that he examined Shirley Webb only twice, including the afternoon of July 6, 1976, when he admitted her to Schumpert Medical Center. He stated that at the time, she exhibited symptoms compatible with a psychotic disorder and opined that her mental condition most likely had been the same that morning. Dr. Harris testified that based on his information, Shirley Webb apparently had difficulty understanding her own business affairs. However, he acknowledged that she might have known about her assets and probably knew who were her relatives and the important persons in her life. Significantly, Dr. Harris also testified that Shirley Webb "possibly" understood the relationship that she was creating through her act of adoption.
The record also includes additional evidence that contradicts a finding that decedent lacked capacity. Robin Kavanaugh, the notary public who witnessed Shirley Webb sign the adoption petition, testified that he would not have notarized her signature unless he was satisfied that she understood the document and that it reflected her intent. In addition, John-David Sullivan, the Colorado judge who issued the adoption decree, testified through deposition that on July 7, 1976, he spoke with a person identified as Shirley Webb. He stated that on the basis of that conversation, he believed her to be competent. Fred H. Hooper, who was the sibling closest to Shirley Webb and who was familiar with her financial affairs, stated in an affidavit that the adoption was Shirley Webb's voluntary act.
The evidence in the record is insufficient to satisfy the Hoopers' burden of proving lack of capacity by clear and convincing evidence. Although Shirley Webb suffered from recurring episodes of delusions and paranoia during several years, hospital reports show that she responded to treatment and was able to function with medication after her release. Succession of Braud, supra involved similar circumstances as are presented in the instant *635 case, in that the testator suffered from confusion and dementia and was taking medication for her symptoms. In that case, the court upheld a trial court finding that the appellant did not meet his burden of proving a lack of capacity by clear and convincing evidence.
Here, the trial court found that on July 7, 1976, Shirley Webb lacked the capacity to consent to personal jurisdiction in the Colorado court because of her admission to Schumpert the previous day. However, the relevant inquiry is whether Shirley Webb lacked capacity at the time she executed the adoption petition on July 6, 1976. Even though she was later admitted to the hospital on that date, this fact does not prove incapacity. On prior occasions, Shirley Webb had been hospitalized for psychiatric evaluation and had responded to treatment. Proof of the presence of a mentally-debilitating condition at the approximate time that the adoption was executed is insufficient to prove by clear and convincing evidence that Shirley Webb lacked capacity when she signed the adoption petition. See Succession of Braud, supra. Dr. Harris acknowledged the possibility that Shirley Webb understood the nature of the adoption when she signed the petition. Moreover, the adoption was consistent with Shirley Webb's testamentary intent, as evidenced by her will, which designated Kenneth Webb as residual legatee of her estate.
Consequently, after reviewing the record and testimony, we must conclude that the trial court was clearly wrong in finding that the Hoopers met their burden of proving by clear and convincing evidence that Shirley Webb lacked the capacity to execute the adoption petition, and thereby to consent to the jurisdiction of the foreign court. Therefore, we reverse the trial court's judgment declaring the Colorado adoption decree invalid and not entitled to full faith and credit.
For the foregoing reasons, the trial court's judgment denying full faith and credit to the Colorado decree of adoption of Kenneth Webb is reversed. We remand the case to the trial court for further proceedings consistent with this opinion. Costs are assessed to the appellee, Succession of Shirley Hooper Webb.
REVERSED AND REMANDED.