Denegre vs. Denegre.

## No. 7834.

### MRS. ADA PIERCE DENEGRE VS. WIDOW JAMES D. DENEGRE.

The liability of the agent of an executrix for the illegal management of the affairs of the estate, is to his principal and not to the heirs. The claim of the latter for any loss which such agent may have caused the estate, is against the executrix.

The Executors in this case cannot be charged with the loss of funds in the hands of certain bankers in France, because they were authorized by the will of the testator to leave those funds there.

The Executors have no right to account on the *gold basis* for the pounds sterling, francs and other assets of the estate, converted into the United States currency. What the pounds sterling, francs, etc., realized in currency, should be accounted for in currency.

In default of a charge of malfeasance, the Executors cannot be held responsible for the difference between what the funds in Europe did realize and what they would have realized in 1865, had they then been converted by the Executors, because the matter was left to the discretion of the latter by the testator.

Heirs living in the family residence and rendering valuable services to the estate, cannot be charged with board and lodging, in the absence of substantial evidence of an agreement to that effect.

A PPEAL from the Second District Court for the parish of Orleans. *Tissot*, J.

*Thomas J. Semmes* for Plaintiff and Appellant.

*Sam'l P. Blanc* for Defendants and Appellees:

First—Where, on the demand of an heir to obtain an account, and have fixed and delivered his interest in an estate, the executor files an account, which does not include an obligation due from the heir to the estate, the co-heirs are interested to have the account amended, and to defeat claims made by one whose obligations far exceed his rights.

Second—Co-heirs having an interest may intervene in a proceeding between one of the heirs and the executors, to protect their rights, save the estate from illegal demands, and to have accounts correctly made. 4 Rob. 296; 28 An. 607; 25 An. 534; 17 An. 133.

Third—An intervention, even in ordinary proceedings, is allowable at any time before judgment, provided the intervenor shall be always ready to proceed, and shall not retard the case; but the required time for citation under the intervention must always be allowed, and is not to be considered as retarding the trial. C. P. 364; 16 L. 283; 3 An. 331; 20 An. 258; 25 An. 565.

Denegre vs. Denegre.

Fourth—Though the intervention be entered on the day of trial, it must be admitted, and time for citation allowed, if necessary. 25 An. 565.

Fifth—An appearance for the purpose of opposing an executor's account, in a probate court, can be made at any time before the homologation. 9 L. 48, 59 ; 23 An. 527; 4 Rob. 296; 10 L. 358.

Sixth—An account rendered in one succession without citation, other than that of publication, to the heirs thereof, is not binding on them. 6 L. 225; 3 An. 383; 8 N. S. 347; 2 L. 146 ; 6 L. 354 ; 8 L. 231 ; 16 L. 157 ; 13 An. 97, 537 ; 9 L. 284 ; 9 An. 85 ; 11 An 412.

Seventh—An account to pay debts rendered in one estate is no bar to the enforcement of an obligation due to another estate; the province of an account is to obtain conclusive authority to pay or distribute funds, and not to bar or defeat claims not involved in the account, nor in any manner relating to the purposes for which the account was rendered. The whole effect of an account is to conclude persons, as to passive debts therein expressed, and to protect the administration in their payments. 12 An. 337; H. D. p. 759, Nos. 2, 13 et seq.

Eighth—One who is acting as the agent of an estate must account in full for bonds and securities deposited with him for safe-keeping.

Ninth—The possession by the executor of John Denegre's estate, of bonds belonging to the estate of James D. Denegre, and which he has been charged, as executor, to return to the owner, is the possession of the estate he represents, and if he fails to account for them, that estate will be responsible.

Tenth—The receipt of the bonds by John Denegre, for safe-keeping for the estate of James D. Denègre, and his written treatment of the bonds as the property of that succession, will estop him, and those claiming under him, from defeating a recovery of the bonds, by denying the title to be in that estate. 21 An. 594; Bigelow on Estoppel, pp. 420, 425; 8 Cal. 303; 9 Cal. 573; 6 Whart. 418; 9 Bing. 382.

Eleventh—One who denies the usufruct of another for one purpose, cannot, in the same case, and for another purpose, admit it, nor gain an advantage in one direction by a denial of that, which, in the next breath is admitted, in order to secure a further advantage. If the usufruct is admitted as existing at all, it is admitted as existing in full.

Twelfth—The acceptance of part of an obligation to make good, bonds which have not been accounted for, does not ratify the misuse of the bonds nor remit the balance due.

Thirteenth—A depositary, mandatary or agent, cannot plead prescription to relieve himself from accounting for bonds left with him. 11 La. 565; 15 An. 469; 1 Rob. 41; 2 An. 997; 12 R. 535; 14 An. 230; 7 An. 535; 15 An. 143; 23 An. 151; 27 An. 133; 16 An. 397; 12 An. 630; Troplong, Prescription, vol. 2, Art. 490; 26 An. 476; 19 An. 491.

Fourteenth—An account rendered to fix the moneyed interest of an heir in the cash of an estate, cannot include property as real estate, bonds and furniture, held in a state of in division.

Fifteenth—An heir who desires to realize his interest in the real and movable property of an estate, must proceed by partition, and not seek through an account to have the value of that interest paid him.

Sixteenth—There is no law which imposes a duty on executors to withdraw funds belonging to major heirs from foreign investments or deposits made by the testator, more especially when the testator expressly leaves it to the discretion of his executors to retain said investments or deposit, as placed by him.

Seventeenth—A loss of part of such a deposit by the failure of the bank where it was placed, and without fault of the executors, is not chargeable to them, and must be borne by the estate.

Eighteenth—An heir who has been supported and his expenses paid by an estate, owned in common with other heirs, is properly chargeable with the costs or amount of his maintenance and such expenditures.

The opinion of the Court was delivered by

BERMUDEZ, C. J. In 1874, the plaintiff, Ada Pierce, widow of John Denègre, claiming to be entitled to the usufruct of her husband's share in the succession of James D. Denegre, his father, who died in 1865, brought this suit against the executors of the latter, to be paid an annual interest on the value of that share. She was resisted on the main ground that, as James D. Denegre had not by any testamentary disposition disposed otherwise of his share in the community property, his surviving spouse, one of the defendants in the case, was entitled to the usufruct of the same during her widowhood, and as the plaintiff's husband, if he were alive, could take nothing, she, claiming in his rights, could not recover.

In 1876, the Supreme Court, reversing the judgment appealed from, adjudged the plaintiff entitled, as usufructuary, under the will, to the share of her late husband in the succession of his father; the amount of such interest to be ascertained in a subsequent proceeding. The opinion is not reported. See O. B. 45, fol. 529.

In furtherance of this judgment an account was presented, in 1877, by the estate of James D. Denegre, and its homologation was asked contradictorily with Mrs. John Denegre.

It purports to show the condition of the succession of James D. Denègre one year after his death. It realizes, on a gold basis, a balance of $521,432 75 in favor of the widow and heirs, allowing half to the former and half, less a special legacy of $10,000, to the latter, thirteen in number, giving to each $19,670 49.

To that account are appended two minor *exhibits*, which propose to indicate: 1st, the interest of Joseph Denegre, one of the sons of J. D. Denègre, who died intestate, prior to John Denegre, in his father's succession; 2d, the interest of John Denegre, plaintiff's husband, who subsequently died, inheriting from Joseph, leaving his mother as a forced heir, for one-third, his brothers and sisters and his widow as legatees, the former for the naked ownership, the latter for the usufruct of the remaining two-thirds, the disposable portion.

The account of Joseph Denegre's interest shows him, on the gold basis, to be entitled to $19,670 49 in capital, and to $9,835 24 in interest, less $19,721 39 in capital and $9,511 74 in interest, charged against him, leaving a balance of $272 60, to which is added his interest in a firm to which he belonged, $6327 54, forming an aggregate of $6600 14, which is offered to be divided, one-fourth to his mother and three-fourths, share alike, to his brothers and sisters, among whom John Denegre or his representatives.

The account of John Denegre's interest shows him, on the gold basis, to be entitled likewise to $19,670 49 in capital, $9835 24 in interest, less

$18,709 84 in capital, $8461 82 in interest, charged against him, leaving a balance of $2334, to which is added an amount underpaid in settling the estate of Joseph Denegre, viz : $14 27.

Widow John Denegre opposed the homologation of the accounts, on *nine* grounds.

At the moment of trial, Henry Denegre and George Denegre, two other sons of James D. Denegre, full brothers of John Denegre and, as such, co-heirs in the succession of J. D. Denegre, claiming to have an interest to resist the opponent, were permitted to intervene and to ask that the account of John Denegre be charged with fifty-nine State and city bonds, amounting to $29,000 in capital, and to $130 20 in coupons. They averred that the bonds belonged to the succession of James D. Denegre, that John Denegre who had the management of the estate for account of his mother, who was executrix, had used the same for his personal purposes; but, that a sum of $6601 33 had been received from his executor by the estate of James D. Denegre.

To the opposition of Mrs. John Denegre, exceptions were filed by Mrs. James D. Denegre. They are the same which were urged at the incipiency of this litigation, which were overruled, and which so *remained,* under the judgment of the Supreme Court of 1876, they are the same that were pressed, as grounds in a suit in nullity instituted by Mrs. James D. Denegre against Mrs. John Denegre, and which were likewise overruled by both the lower and appellate courts, so that they must be considered as standing no longer in the way of the determination, as far as practicable, of the present controversy.

Objections were filed and exceptions taken by Mrs. John Denegre to the intervention of Henry and George Denegre, which it is unnecessary to specify, considering the disposition which shall be made of the proceeding.

We will, therefore, now approach the merits; first of the intervention and next of the opposition.

From the terms of the judgment of the Supreme Court, in 1876, in furtherance of which the account of the estate of James D. Denegre, now before us, was presented, we take it that the will of the deceased, James D. Denegre, was *finally* construed as having taken away from his widow the usufruct which she would have had of his share in the common assets had he died intestate, as giving to each of his children the right to demand from his executors his proportion of that share, and as recognizing Mrs. John Denegre as entitled to ask from the succession of James D. Denegre the enjoyment or usufruct of the disposable portion of the share of her husband.

Standing upon that basis, we must ignore all the claims of Mrs. James D. Denegre as usufructuary and deal with her as with the executrix of

the will of her deceased husband, accounting to one of the representatives of one of his forced heirs, who, by his will, has dismembered his share of inheritance by giving the usufruct of the disposable portion ($\frac{2}{3}$) to his widow and the naked ownership of it to his collaterals,—his mother claiming and taking, free from all encumbrance, her légitime ($\frac{1}{3}$) as a forced heir.

The récord shows that, at the date of the inventory, there were no bonds in the name of James D. Denegre, except *ten* State bonds; that subsequently, forty-nine bonds were acquired for account of the estate of James D. Denegre, which were afterwards disposed of by John Denegre, for his personal advantage and not accounted for by him, except so far as the amount ($6601) mentioned may have effected a settlement.

The acts and doings of John Denegre in the matter can in no manner concern the intervenors. He was the agent employed by Mrs. James D. Denegre, as executrix. What liability he may have incurred can be enforced, not by his co-heirs, but by his principal, who is primarily responsible to the heirs of James D. Denegre for the unauthorized acts of her mandatary, for whose acts she is to them liable.

The amounts used by John Denegre in the purchase of the bonds cannot be considered as an investment for account of the succession of James D. Denegre, however liberally his will may be construed on the subject of delegation of discretionary powers to his executors touching an investment ot funds.

It is immaterial to the heirs of James D. Denegre whether the acts of John Denegre were or not ratified by Mrs. James Denegre by receiving the proceeds of the sale of the bonds. That ratification may produce some effect, but whatever it may be, it does not affect but can only benefit those heirs. Mrs. James Denegre does not raise her voice in this matter to fix any liability on her son's estate for this misappropriation. It does not appear that she ever pretended to urge any claim against him or his succession; she settled his affairs as executrix and participated in the distribution of his assets. She has assumed the attitude of an heir.

We are at a loss to discover what standing the intervenors have in court to assert and champion in the name of the estate of James D. Denegre, or in that of their mother, rights which the executors would have no authority to enforce against the estate of John Denegre, and which could be averred and insisted upon by Mrs. James Denegre *alone*, whom the intervenors have no authority to represent, and do not represent, and who, did she act, could not herself fasten upon the succession of James D. Denegre the loss sustained in the transaction inflicted upon her by her agent.

The intervention must, therefore, be dismissed, and Mrs. James

D. Denegre remain accountable to the succession of her husband for the ten State bonds described in the inventory, and touching which no mention is made in the account.

2d. We will now proceed to consider the *nine* grounds of the opposition.

The *first* item of opposition charges that the estate of James D. Denegre is estimated in the account, on the *gold* basis, at $521,432, whereas it consists besides of assets which are stated, and which aggregate $113,846 78, according to the inventory, which foots up $800,000.

We do not understand that the account proposed the sum which figures on it as representing the whole of *all* the assets standing in the name of James D. Denegre at his death, or at the date of the filing of the statements.

The account should have set forth explicitly all the succession assets of any description, from whatever source derived, and presented the form and appearance of a "*tableau of distribution.*" It refers to receipts for $51,394, but we do not propose to pass upon that item in view of the ultimate disposition which we intend to make of the case.

The *second* ground of opposition is to an item of 132,289 39 francs, with which the estate credits itself as a loss sustained by the failure of Dupasseur & Co. in Europe, and which, it is claimed, should be debited to the executors.

We do not consider that they are chargeable with the loss. When Mr. Denegre died the amount in the hands of those bankers to his credit was some 826,000 francs. By his will, he expressly directed his executors to allow the money to *remain* where he had placed it until the close of the war; and even subsequently, to continue investing his funds in European securities, if *they deemed it advisable,* for the interest of his family and for the greater security of the capital itself.

The record shows that the executors had reduced the above amount to 132,239 francs.

The *third* ground of opposition is to the proposed gold settlement, because the payments in currency are reduced to *gold,* at the rate of $113 in currency for $100 in gold, whereas, in 1866, the sale of the realized 335,000 francs and 6464 pounds sterling actually produced $130,932 77 in currency, a sum more than sufficient to pay all the debts of the succession.

It appears to us that the proposed mode of settlement on the *gold* basis is properly objected to by the opponent. We do not perceive why francs and pounds sterling, converted into U. S. currency, and why other assets received in like currency, should be accounted for on the *gold basis.* What the francs and pounds sterling and other assets realized *in currency* should be accounted for in currency.

The *fourth* ground of opposition has for its object to charge the executors with the difference between what the funds in Europe would have realized and what they have produced, had they been withdrawn in 1865, namely : a difference or premium of forty-five cents *in currency* on the *gold* dollar.

Under the terms of the will no responsibility can be saddled upon the executors, who were left a discretion on the subject. There is no charge of malfeasance against them. They must, therefore, be assumed to have exercised that discretion to the best of their judgment and ability and according to their conscience. The less can they be sought to be made liable, as their acts and doings were to the knowledge of John Denègre, who never protested against the same, who, therefore, may be considered as party or privy thereto, and so, as having sanctioned the course pursued. What *he* could not do, those claiming through him cannot be permitted to set up and urge.

The *fifth, sixth* and *seventh* grounds, which disputed the allowed paraphernal claims of Mrs. James Denègre for $19,000, and advances made to Joseph and John Denègre of 1033 pounds each, have been abandoned.

The *eighth* ground of opposition is to the items for board and lodging in the proposed settlements with the estates of Joseph and John Denegre.

The amount charged to John's account in capital and interest foots $6114; that to Joseph's account foots $6710.

We find that both John and Joseph occupied the family residence, using the family furniture, which was their joint property, and that they rendered valuable services to the estate and to their mother.

In the absence of substantial evidence, establishing a clear understanding by which they were to pay for their board and lodging as charged, and to render gratuitously the services which they have rendered, we do not feel authorized to allow their account to be debited with those items.

The *ninth* ground which tends to have the account of Joseph Denegre credited with $7486 66, due him as one of the executors of his father and which was never received by him, is acquiesced in as correct, and assurance is given that the credit will be allowed.

The judgment of the lower court sustained the intervention, so as to decree the estate of John Denegre to be indebted to the estate of James D. Denegre in the sum of $24,164 19 with interest and costs, and dismissed it in other respects; it maintained the opposition as to the first ground set forth, but rejected it in other regards, and amending the account accordingly, it decreed its homologation and ordered a distribution of funds in the manner indicated.

We agree with the District Judge in holding the estate of James D. Denegre accountable for all the assets not included in the account before us, but we do not concur in the other portions of his judgment.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be affirmed so far as it holds the estate of James D. Denegre accountable for assets not mentioned in the account under consideration, and that, in all other respects, it be reversed, and proceeding to render such judgment as should have been rendered by the lower court,

It is ordered, adjudged and decreed that the account presented by the estate of Jas. D. Denegre be amended by striking therefrom the proposed settlement on a *gold* basis and by requiring the executors to substitute thereto an account of all the funds received by them, in their capacity, in United States currency, as also of all the assets and property standing in the name of James D. Denegre at his death and which came to their possession as executors, together with a full and complete statement of their administration of the property of the succession from the beginning, including all amounts received and which should have been received and accounted for, and all amounts disbursed with authority on account of the estate, or due thereby, without prejudice to the rights, if any, of the opponent or of any other party concerned, to claim an account of assets and yieldings thereof, or interest, to which they may be entitled and which may not have been personally provided for by this decree;

And it is further ordered, adjudged and decreed that the items for board and lodging charged in the accounts to Joseph and John Denègre be stricken therefrom; and that the account of Joseph Denègre be credited with the sum of seven thousand four hundred and eighty-six dollars and sixty-six cents ($7,486 66) with legal interest thereon from judicial demand.

It is further ordered, adjudged and decreed that in all other respects the opposition of Mrs. Ada Denegre, widow of John Denegre, and the intervention of Henry and George Denegre be dismissed.

Considering that the account rendered and the *exhibits* thereof concerning the estates of Joseph Denegre and of John Denegre should be recast and remodeled, so as to conform with the views herein expressed, and that another proper account with other *exhibits* concerning said estates should be substituted thereto accordingly—

It is ordered, adjudged and decreed that this cause be remanded and referred to the Civil District Court for the parish of Orleans, which has superseded the Second District Court for said parish, by which it was tried, there to be further proceeded in, with instructions to that court to have the present judgment executed and a new account ren-

dered with *exhibits*, in furtherance of the views herein expressed and of the decrees herein made and, in all other respects, in further accordance with law,

It is ordered and decreed that the costs of the intervention be paid by the plaintiff therein, and those on opposition by the succession of James D. Denegre, in both courts.

Rehearing refused.