KLIEBERT, Judge.
This is a devolutive appeal by the plaintiff from the trial judge’s refusal to make executory judgments of the Circuit Court in Hot Springs, Arkansas in amounts of $14,-786.64 and $578.75.
The defendant, M. G. Holder gave Harold and Vera Verser his unsecured note in the amount of $12,000.00 as the down payment on the purchase of a house and lot in Hot Springs, Arkansas. The balance of the purchase price was a note given to First Feder *12 al Savings and Loan, secured by mortgage on the house and lot. Holder then sold the house and lot to Gregory J. Clayton who assumed the mortgage note. Several months later, Clayton acquired from the then holder the $12,000.00 promissory note given by Holder for the down payment.
As the then holder of the note, Clayton sued Holder, then a Louisiana resident, in an Arkansas Court on the note and obtained a judgment against him for $14,786.64. Additionally, Clayton sued for and obtained a default judgment in the amount of $578.75 for delinquent ad valorem taxes assessed against the property while Holder was the record owner, which Clayton had paid. Clayton sought to have both judgments made executory in St. Charles Parish.
In the St. Charles Parish proceeding, Holder filed a general denial and reconven-tional demand. In essence, his pleading in the Louisiana trial court set up a defense grounded in the contention the Arkansas court did not have jurisdiction over him at the time it rendered the judgments against him.
The trial judge made the following fact findings: the debts resulted from transactions in Arkansas; pursuant to the requirements of the Uniform Service Act, Holder was given required notice by a deputy sheriff in St. Charles Parish and Holder was in fact represented by an attorney in the Arkansas proceedings. For those reasons, the trial judge concluded the Arkansas court did have jurisdiction over Holder at the time the judgments were rendered and hence concluded the judgments were valid Arkansas judgments. However, he refused to make the judgments executory in Louisiana for the reasons which follow:
During the course of the hearing, evidence was introduced to show the house had originally been purchased by Holder for Clayton as part of an overall settlement agreement. According to the written settlement agreement, Clayton had relieved Holder “of any and all obligations due me [Holder] from this date forward”. According to Holder the agreement with Clayton was to settle all of their affairs arising out of the development of a shopping center in Arkansas. Although purchased in his name, Holder contended the house was purchased for Clayton as part of the settlement agreement. The settlement agreement was dated February 14, 1978. Clayton paid the delinquent taxes on November 2, 1978 and was assigned the unsecured note on September 28, 1979. Since the note and taxes were not indebtednesses owed to him at the time the release was executed, Clayton, in the trial court, contended the indebtedness for the note and unpaid taxes were not covered by the settlement release he executed for Clayton.
Following the hearing the trial judge concluded the release granted by Clayton to Holder barred further action on the Arkansas judgment. Therefore, he refused to make the judgments executory and ordered their inscription in the mortgage records cancelled.
In his brief in this appeal, counsel for Clayton states “the release which was introduced in the Louisiana Court would have constituted an affirmative defense in the Arkansas Court”. However, he argues the burden was on Clayton to raise the defense and having failed to do so, Clayton cannot now use the release to collaterally attack the Arkansas judgments. Correctly, he argues a Louisiana Court must, under Article 4, Section 1 of the United States Constitution, give full faith and credit to the valid judgment of another state. However, Courts of this State have consistently and repeatedly recognized and permitted collateral attacks on foreign judgments where the rendering state would have permitted such an attack. In West v. Lawrence, 297 So.2d 448 (3rd Cir. 1974), at page 445, the principal is explicitly set forth as follows:
“... Louisiana courts have recognized that extrinsic fraud (such fraud as would prevent prosecution of an effective defense or would prevent an adversary trial of the issues) may be asserted as a bar to recognition of the foreign judgment, while intrinsic fraud (such fraud as would simply amount to an affirmative defense *13 to the original cause of action) would not serve as a defense to the recognition of a foreign judgment.. . . ”
In the past, the courts of Arkansas have granted equitable relief from a judgment for extrinsic fraud and allow a collateral attack on the judgment to prove it. See Liebendorfer v. Gayle, 217 So.2d 37 (3rd Cir. 1968).
In his reasons for judgment, the trial judge made the following statement: “The court will not comment on the failure of the defendant to present this defense [i.e., the release executed by Clayton] in the Arkansas Court”. We note, however, that the attorney who represented Holder in the Arkansas proceeding was not admitted to practice in Arkansas and according to Clayton’s attorney was unfamiliar with the Arkansas procedures. Although the attorney for Holder had filed an answer in the suit on the note, Clayton’s attorney was able to obtain the judgment by default. This was accomplished by use of an Arkansas procedural statute dealing with written obligations. Under the statutes, plaintiff’s attorney files a motion to strike the answer with a verified affidavit of no defense. If opposing counsel fails to file a counter acting affidavit setting out a defense, the motion to strike is granted and a default judgment may then be obtained. Whether Holder’s Arkansas attorney failed to respond to the motion to strike due to lack of familiarity or out of lack of diligence or out of design is not shown by the record, but clearly, his inaction effectively prevented Holder a valid defense against the claim, i.e., the release, from being presented to the Arkansas Court. Until the effort to enforce collection was made, Holder was unaware judgments had been rendered against him by the Arkansas court. Both Clayton and his attorney admitted in the Louisiana proceeding the house had been purchased for Clayton as part of a settlement agreement and for which he had executed a release.
Although the release was a valid defense to Clayton’s claims, the Arkansas judgments would be entitled to full faith and credit in the Louisiana Courts, unless under Arkansas law the judgments could be set aside for ill practice or as a nullity due to the failure of the person representing Holder in the Arkansas suit from presenting his valid defense. Although there is evidence indicating that the person representing Holder was aware of Holder’s valid defense there is evidence indicating he was not admitted to practice in Arkansas and was unfamiliar with Arkansas procedures. However, there is nothing to indicate why, unbeknown to Holder, he allowed the judgment to be rendered by default. Nor is there evidence in the record from which a determination can be made as to whether his unlawful representation of Holder, which resulted in a loss to Holder, would constitute an extrinsic fraud under Arkansas law. Were it not for the fact the person representing Holder was not admitted to the Arkansas bar, we would readily reverse the trial judge and make the Arkansas judgments executory. However, since making the judgments executory may compound a fraud or injustice previously committed on Holder, in the interest of justice, we set the judgments aside but remand the case to the trial judge for the purpose of taking evidence as to why the person representing Holder failed to present his valid defense and whether under Arkansas law that reason constituted extrinsic fraud. Unless such evidence satisfactory to the trial judge is presented, the Arkansas judgments are to be made executory by him.
Each party to bear his own cost of the appeal.
SET ASIDE AND REMANDED.
BOUTALL, J., dissenting with written reasons.