648 So.2d 1371 (1995)
Annie Mae Fuller ANDERSON, et al., Plaintiffs-Appellants,
v.
Elizabeth Smith COLLINS, et al., Defendants-Appellees.
No. 26142-CA.
Court of Appeal of Louisiana, Second Circuit.
January 6, 1995.
Rehearing Denied February 23, 1995.
*1374 Paul D. Spillers, Theus, Grisham, Davis & Leigh, Monroe, for appellants.
F. Drake Lee, Jr., Cook, Yancey, King & Galloway, Shreveport, Paul B. Deal, Lemle & Kelleher, New Orleans, for appellees.
Before VICTORY and BROWN, JJ., and JONES, J. Pro Tem.
JONES, Judge Pro Tempore.
In this malpractice action by presumptive heirs against an administratrix's attorneys and their insurers in connection with the handling of an intestate succession, the plaintiffs appeal a judgment maintaining defendants' exception of no cause of action, and giving full faith and credit to two judgments rendered by Arkansas courts barring plaintiffs from litigating the validity and enforceability of certain promissory notes. The defendants answered, alleging the trial court erred in denying an exception of no right of action and in denying summary judgment. We reverse in part, affirm in part, and remand.

FACTS
Jo Anne Fuller died intestate on January 20, 1984, in Monroe, Louisiana. Four promissory notes, hereinafter referred to as the Newbern notes, were found among the decedent's effects by Wade R. Baggette, who initially served as the provisional administrator of the estate. Each of the notes was executed by David Newbern; was dated March 5, 1981; and was made payable on March 4, 1982 to Jo Anne Fuller. The principal amount of these notes is alleged to be in excess of 4.9 million dollars.
Mr. Baggette was replaced as succession representative by Elizabeth Smith Collins who hired the law firm of Cary & Cary to provide her legal assistance in her fiduciary capacity as administratrix of the succession. Ms. Collins posted a bond in the amount of $500,000 on which the surety was Great American Insurance Company.
On or about March 5, 1987, the Newbern notes prescribed while they were in the possession of the law firm. Subsequently, the lawyers arranged for Mr. E.H. Herrod, an attorney in Little Rock, Arkansas, to file a *1375 lawsuit against Newbern on behalf of Ms. Collins in her capacity as administratrix. Before the Arkansas suit on the promissory notes was filed in March 1988, Jo Anne Fuller's heirs, including Annie Mae Fuller Anderson, Eloise Fuller Wiggers, George Edward Wiggers, Nancy Wiggers Baggette and Wade R. Baggette, filed a lawsuit against the administratrix's lawyers, both individually and as a law firm, and also sued Ms. Collins, as well as her insurer, Great American Insurance Company. In addition to seeking recovery of the amount of the promissory notes plus accrued interest, the petition also alleged that the administratrix and her counsel had caused damage to the estate in the amount of $525,000 in connection with certain federal tax liability that should not have been incurred. On April 18, 1988, the Arkansas court granted summary judgment providing that the Newbern notes had prescribed, but also providing that the notes lacked consideration.
On September 29, 1988, the plaintiffs filed an amended petition alleging that the deceased was a co-maker on a note (Note 102) with David Newbern of Little Rock, Arkansas. The note was in the amount of $1,783,290.53, with a maturity date of April 13, 1984. Based on the administratrix's requests, Note 102 allegedly was repeatedly extended by its holder, Commercial National Bank. Plaintiffs allege that the administratrix and her counsel breached a duty of prudent management owed to the heirs of the estate by failing to timely liquidate certain certificates of deposit and apply their proceeds toward the payment of Note 102. This breach allegedly resulted in damages to plaintiffs in excess of $102,000. The amended petition also alleged several additional matters which were claimed to have resulted in damages to the petitioners. The liability of David Newbern as to Note 102 was tried by an Arkansas jury which found that Note 102 lacked consideration.
In May 1990, Great American Insurance Company, which had previously filed a cross-claim against Elizabeth Smith Collins, filed a motion to dismiss its demand against her for the reason that Great American had compromised and settled its claim against Ms. Collins. However, the motion for dismissal did not mention Great American's third party demands which it had filed against the Carys and their insurers. The court granted Great American's motion to dismiss against the administratrix.
Similarly, in July 1990, a motion for dismissal was filed by the plaintiffs, including Wade R. Baggette, appearing "individually and in his capacity as Administrator of the Succession of Helen Smith Collins and as Successor Administrator of the Succession of Jo Anne Fuller", requesting the court to dismiss the lawsuit against Elizabeth Smith Collins and Great American Insurance Company, with prejudice, because the plaintiffs had compromised and settled their claims against Elizabeth Smith Collins. The trial court also granted this motion to dismiss. Neither the motion nor the order referred to the cross-claim which Elizabeth Smith Collins had filed against the Carys and their insurers.
On April 19, 1993, the plaintiffs filed a second amended petition which added additional mismanagement claims against the Carys and joined their professional liability insurers, New England Insurance Company and the Home Insurance Company as additional defendants. The second amended petition also made further allegations in connection with the Newbern notes:
13.
Arkansas counsel was retained by Curtis W. Cary and Paul W. Cary for the sole purpose of obtaining a Judgment from the Arkansas Court that the Newbern Notes were lacking in consideration and, therefore, were worthless assets on the date of death of Jo Anne Fuller.
14.
Pursuant to instructions and directions from Paul W. Cary and Curtis W. Cary, Arkansas counsel filed suit on the Newbern Notes for the sole purpose of proving the notes were worthless on the date of Jo Anne's death. Arkansas counsel, acting pursuant to the instructions from Paul W. Cary and Curtis W. Cary, was successful in his efforts to obtain a Judgment of the Arkansas court which held the Newbern *1376 Notes were lacking in consideration and, therefore, were unenforceable.
15.
Arkansas counsel hired by Curtis W. Cary and Paul W. Cary filed a lawsuit in Pulaski County, Arkansas, in proceedings captioned "Elizabeth Smith Collins, Administratrix of the Estate of Jo Anne Fuller vs. David H. Newbern", Suite No. 88-1379 on the docket of the Circuit Court of Pulaski County, Arkansas, Second Division. The four Newbern Notes were the subject matter of that litigation.
16.
After being served with the lawsuit, David H. Newbern asserted, by way of a Motion for Summary Judgment, two defenses:
1) Prescription; and
2) Lack of Consideration.
17.
Acting pursuant to the instructions and direction of Curtis W. Cary and Paul W. Cary, their Arkansas counsel did not oppose the Motion for Summary Judgment and, accordingly, the court granted the Motion for Summary Judgment and held:
1) The Newbern Notes had prescribed; and
2) The Newbern Notes lacked consideration.
18.
Curtis W. Cary and Paul W. Cary had a conflict of interest when they retained Arkansas counsel to represent the Estate of Jo Anne Fuller in connection with the Newbern Notes. When Arkansas counsel was retained Curtis W. Cary and Paul W. Cary had notice that their failure to timely file suit to collect the notes would be the subject of a malpractice action against them.
19.
The Judgment of the Arkansas Court rendered in response to the Motion for Summary Judgment pertaining to the Newbern Notes was obtained by fraud and ill practices.
The remaining defendants filed motions for summary judgment and exceptions of no cause of action. An exception of no right of action also was filed as well as an exception of prescription, although the latter exception was never set for hearing.
The trial court sustained the exceptions of no cause of action and overruled the exception of no right of action. The court also denied the motions for summary judgment. It should be noted that the trial court apparently made its rulings on the exception of no right of action and the motions for summary judgment prior to its ruling on the exceptions of no cause of action, even though all the motions and exceptions were ruled on the same day. Finally, the Cary defendants also filed a motion in limine requesting that the trial court give full faith and credit to the final judgments entered by the Arkansas courts concerning the validity and enforceability of the promissory notes previously discussed. Earlier on the same day that the court ruled on the exceptions and motions for summary judgment, the court also granted the motion in limine.
The plaintiffs appealed, alleging that the trial court erred in granting the exceptions of no cause of action and in granting the motion in limine. The defendants answered the appeal, alleging that the trial court erred in dismissing the exception of no right of action and motions for summary judgment.

EXCEPTIONS OF NO CAUSE OF ACTION AND NO RIGHT OF ACTION
The judgments in this case reflect a confusion of the distinction between an exception of no cause of action and an exception of no right of action. In Babineaux v. Pernie-Bailey Drilling Company, 261 La. 1080, 262 So.2d 328, 333 (1972), the supreme court provides a good discussion of the difference between the two exceptions:
There has been much discussion about the purpose of the exception of no right of action, and many attempts to differentiate that exception from the exception of no *1377 cause of action. One of the best statements of the definition of no right of action and of the basis of the distinction between it and no cause of action was given by the late Henry George McMahon: "The former [no cause of action] is used to raise the issue as to whether the law affords a remedy to anyone for the particular grievance alleged by the plaintiff; the latter [no right of action] is employed (in cases where the law affords a remedy) to raise the question as to whether plaintiff belongs to the particular class in whose exclusive favor the law extends the remedy, or to raise the issue as to whether plaintiff has the right to invoke a remedy which the law extends only conditionally." McMahon, The Exception of No Cause of Action in Louisiana, 9 Tul.L.Rev. 17, 29-30. See also McMahon, Parties Litigant in Louisiana, 11 Tul.L.Rev. 529-30. The exception of no right of action, however, cannot be invoked to determine whether a particular defendant can stand in judgment in a particular case, i.e., whether the right or remedy can be exercised against that defendant. In Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3d Cir.1967), Mr. Justice Tate of our court then writing for the Court of Appeal, correctly stated the purpose of the exception of no right of action:
"The want of interest raised by the exception relates primarily to whether the particular plaintiff falls as a matter of law within the general class in whose favor the law grants the cause of action sought to be asserted by the suit, with the factual evidence admissible being restricted as to whether this particular plaintiff does or does not fall within the general class having legal interest to sue upon the cause of action asserted ...
"In short, the objection of no right of action raises the question of whether the plaintiff has a legal interest in the subject matter of the litigation, assuming (for the purpose of deciding the exception) that a valid cause of action is pleaded by the petition. LeSage v. Union Producing Co., 249 La. 42, 184 So.2d 727 [1966]."
[Footnotes omitted.]
In the instant case, no one disputes the fact that heirs have a cause of action against the administrator of a succession for mismanagement. Indeed, under the provisions of Article 3191 of the Louisiana Code of Civil Procedure, a succession representative is a fiduciary with respect to the succession, shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act. However, the fact that the succession representative is personally responsible for all damages resulting from his actions, does not mean that an attorney hired by a succession representative in connection with the performance of the representative's fiduciary duties is insulated from claims of malpractice. Even if an attorney were insulated though notions of privity of contract from malpractice actions by all except the client-representative, the law thereby would afford a remedy. The petition, as amended, does state a cause of action. Thus, the trial court herein erred in sustaining the exception of no cause of action.
On the other hand, having determined that a valid cause of action for malpractice is pleaded herein, we still must determine whether the plaintiffs belong to the particular class in whose exclusive favor the law extends the remedy. Under the facts of this case, this determination has two separate aspects. First, one can argue that a succession representative's attorney has a duty only to the representative as client, and that lack of privity of contract prevents any other individual from bringing an action against the attorney for malpractice. Second, even if the lack of privity of contract defense is rejected in such circumstances, one can argue that under Louisiana procedural law, only the succession representative can enforce a right of the deceased or of the succession while the succession is under administration. LSA-C.C.P. Art. 685.
In Penalber v. Blount, 550 So.2d 577 (La. 1989), the Supreme Court of Louisiana concluded that an attorney can be held accountable to a non-client for intentional tortious conduct, but that no cause of action lies in favor of a non-client under theories of malpractice and negligence because the attorney *1378 owes no duty to the adversary of his client. In a footnote, the court stated that its opinion did not address situations where the non-client is not an adversary, but a third party beneficiary. On this point, the court cited Succession of Killingsworth v. Schlater, 270 So.2d 196 (La.App. 1st Cir.1972), writ granted, 273 So.2d 292 (La.1973), reversed in part, affirmed in part, 292 So.2d 536 (La.1973). Killingsworth is a significant case for consideration in our analysis of this issue, because there the will of Mrs. Killingsworth was declared invalid and an issue arose as to whether or not the notary was liable to the legatees under the invalid will as a result of his failure to use proper care in confecting the will. The court of appeal held the notary liable under LSA-C.C.P. Art. 2315, but rejected liability founded upon a breach of a stipulation pour autrui, disagreeing with that doctrine as enunciated in Woodfork v. Sanders, 248 So.2d 419 (La.App. 4th Cir.1971). The Louisiana Supreme Court agreed that the legatees could recover under Article 2315, but found error in the court of appeal's rejection of liability founded upon a breach of a stipulation pour autrui.
The supreme court discussed the doctrine of stipulation pour autrui, and adopted with approval, language from Woodfork, supra:
Defendant's second ground of exception, lack of attorney-client privity between himself and plaintiff, is likewise rejected. The testator sought defendant's professional legal assistance in order to benefit plaintiff, the intended universal legatee. We believe the stipulation that a lawyer is to confect a will to institute third party's legatees is a stipulation pour autrui, C.C. Art. 1890, for damages for breach of which the third party may sue.... We are satisfied that an attorney's clear error in confecting a will, which the exercise of a reasonable competence would have avoided, constitutes a breach of the contractual stipulation for the benefit of the intended legatee.
248 So.2d at 425. (Citations omitted.)
Although, on rehearing in Killingsworth, the supreme court set aside its original decree after ultimately concluding that Mrs. Killingsworth's will was valid, the setting aside of the decree in no way repudiated the court's reasoning concerning attorney-client privity, and the court's subsequent citing of Killingsworth in Penalber, supra, indicates that Killingsworth's rationale concerning an attorney's liability to third parties is still valid.
There can be little doubt that in the last century, the "citadel of privity" has undergone assaults that have lessened the significance of the doctrine in several areas of the law. For example, in the area of negligent misrepresentation where privity of contract is absent, see Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007 (La.1993). The 1881 case of Denegre v. Denegre, 33 La.Ann. 694 (La.1891), exemplifies the more restrictive approach taken in the last century. In that case, the court held that the acts of the son of an executrix whom the executrix had employed in management of the deceased's estate, were of no concern to his co-heirs, and that whatever liability he may have incurred could be enforced not by the co-heirs, but by the executrix who was primarily responsible to the heirs for his unauthorized acts.
In accordance with the foregoing discussion, we conclude that under the facts and circumstances of this case, lack of attorney-client privity alone is not a sufficient basis for sustaining an exception of no right of action. While an attorney has no duty to his client's adversary when acting in his client's behalf, the intent of this rule, as explained in Penalber, supra, is to prevent a chilling effect on the adversarial practice of law and to prevent a division of the loyalty owed to a client. However, a succession representative is not an adversary of the heirs. Instead, the representative is a fiduciary whose duty of collecting, preserving, and managing the succession property concludes with the placing of the heirs in possession. Thus, any attorney representing the succession representative must know the representative's duties and actions are for the benefit of the succession, and ultimately the heirs, who take net after expenses, debts and attorney's fees are paid. Therefore, the attorney's duty extends beyond the individual client to the succession on whose behalf the client is acting in a fiduciary capacity.
*1379 We now turn to the question of whether the heirs can bring an action against the attorneys while the succession is under administration; we conclude that in this case they cannot because it appears that the present administrator is not in an adversarial relationship with the heirs and likely will protect their interests if allowed to proceed with the litigation. In Browne v. Witten, 153 So.2d 184 (La.App. 2d Cir.1963), the residuary legatees and heirs brought an action seeking recovery from the testamentary executor of sums allegedly personally owed by the executor and his wife to the succession. The trial court sustained an exception of no right of action and the plaintiffs appealed. On appeal, this court quoted the provisions of LSA-C.C.P. Art. 685, which state:
Except as otherwise provided by law, the succession representative appointed by a court of this state is the proper plaintiff to sue to enforce the right of the deceased or his succession, while the latter is under administration. The heirs or legatees of the deceased, whether present or represented in the state or not, need not be joined as parties whether the action is personal, real, or mixed.
This court also noted the official revision comments under Article 685 which provided in pertinent part:
(b) This article is declaratory of the jurisprudence so far as it recognizes the right of an administrator alone to institute and prosecute a personal action.... It is similarly declaratory of the jurisprudence to the extent that it recognizes the right of an executor alone to prosecute a personal action. (emphasis added.)
After quoting the article and the comments, this court stated:
We feel the lawmakers have made it abundantly clear by the above codal provisions that while a succession is under administration, the administrator is the sole person authorized to enforce the collection of any debt alleged to be due the succession. This leads to an orderly administration of the estate and prevents a multiplicity of suits which could result if individual heirs were allowed to prosecute claims on behalf of such estate.
Appellants contend that unless defendants are compelled to account to the succession for their personal indebtedness to it the remaining heirs will suffer irreparable injury. They claim the lower court's ruling has placed a cloak of immunity around the executor protecting him from any wrongdoing during his administration. The law does not so protect this executor for acts of either omission or commission during his administration. There are a number of ways these plaintiffs can force him to properly administer the estate or to recompense them for his failure to do so. We do not feel it our duty to enumerate such remedies, except to point out appellants are without a right to personally prosecute the present action which rightfully belongs to a succession presently under administration. (emphasis added.)
We further observe that under the provisions of LSA-R.S. 9:5621, actions against any person who has served as a curator of a vacant succession or as administrator, testamentary executor, or dative testamentary executor of a succession in this state, or against the surety on his bond, arising out of any act the representative, as such, may have done or have failed to do, are subject to a two-year prescriptive period, reckoned from the day of the judgment homologating the final account. The fact that the prescriptive period does not begin to run until the day of the judgment homologating the final account is further evidence of our lawmakers' intent that only the succession representative may institute an action to enforce the right of the succession while it is under administration.
We also observe that if the heirs could directly bring an action against the administratrix's attorneys, not only would an orderly administration of the estate be prevented, but any favorable judgment benefiting the heirs would enure directly to their benefit even though they had not yet been placed in possession. Effectively, the amount of the judgment would not pass through the succession proceedings, a scenario which raises obvious problems with respect to any creditors of the succession.
*1380 For the foregoing reasons, we hold that the presumptive heirs in this case have no right of action against the defendant attorneys. We also hold that the trial court erred in not sustaining the exception of no right of action as to all plaintiffs, with the exception of Mr. Baggette in his representative capacity; Mr. Baggette is now the succession representative herein in place of Elizabeth Smith Collins, and this substitution apparently took place in the succession proceeding prior to the filing of the second amended petition. Under the circumstances, it would appear that the exception of no right of action probably should not be granted with respect to Mr. Baggette, for although he is also a presumptive heir and would have no right to proceed in that capacity, he would have a right of action against the attorneys in his capacity as succession representative.[1] For reasons previously discussed, attorney-client privity would not be a bar to such an action by a new succession representative. Since the record is unclear on the question of whether Mr. Baggette was ever properly substituted as a plaintiff in this suit in his representative capacity, we reverse the trial court's overruling on the exception of no right of action with respect to all heirs other than Mr. Baggette, and we remand the case to the trial court for further proceedings to permit the court to reconsider the exception of no right of action with respect to Mr. Baggette in his representative capacity in light of this opinion.

FULL FAITH AND CREDIT/RES JUDICATA
Under Article IV, Section 1 of the United States Constitution, the courts of each state must give to the judgments of other states the same conclusive effect between the parties as is given such judgments in the states in which they were rendered. Brown v. Brown, 377 So.2d 438 (La.App. 2d Cir.1979), affirmed, 387 So.2d 565 (La.1980), cert. den., 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 615 (1981). Appellants argue that the applicable law with respect to res judicata is Louisiana's prior law of res judicata as set forth in former LSA-C.C. Art. 2286. However, this court rejected a similar argument in Brown, supra, in which the plaintiff argued that should Arkansas law preclude plaintiff from seeking alimony there, Louisiana should not be required to apply the Arkansas rule, but should apply our res judicata provision which would permit a wife free of fault to seek alimony at a later time even though she did not seek alimony in the divorce action. Plaintiff there, as here, attempted to rely on Art. 2286. However, this court stated:
The decision as to whether the Arkansas policy is good or bad and whether we desire to follow it is one we are not empowered to make. It is of the essence of Full Faith and Credit that one state may not inquire into the rightness or wrongness of another state's policy when enforcing the judgment. 377 So.2d at 441.
Similarly, in Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963), the supreme court held that the Full Faith and Credit Clause requires every state to give a foreign judgment at least the res judicata effect which the judgment would be accorded in the state which entered it. Thus, we cannot apply Louisiana principles of res judicata herein.
On appeal, the appellants state in brief that they do not seek to contest the validity of the foreign judgments, and conclude their brief by stating that the two foreign judgments rendered by the Arkansas court are entitled to full faith and credit. Yet it is apparent from appellants' arguments concerning the applicability of res judicata under Louisiana law that appellants still wish to argue to a Louisiana jury that the Newbern notes did not lack consideration and that the Arkansas judgment to the contrary was procured through fraud and ill practices. For the reasons discussed above, the appellants cannot rely on Louisiana res judicata law while conceding full faith and credit. Instead, appellants' argument is internally inconsistent. While this court could *1381 take the harsher view of appellants' arguments, and hold that appellants have abandoned any arguments concerning fraud and ill practices by their statements in brief concerning full faith and credit, this court has a duty to render judgments that are just, legal, and proper upon the record on appeal. LSA-C.C.P. Art. 2164. Accordingly, because appellants plainly wish to pursue the allegations of their second amended petition concerning fraud and ill practices, we will analyze the issue of full faith and credit in light of those allegations.
Louisiana courts have consistently recognized and permitted collateral attacks on foreign judgments where the rendering state would have permitted such an attack. Clayton v. Holder, 417 So.2d 11 (La. App. 4th Cir.1982). In Liebendorfer v. Gayle, 217 So.2d 37 (La.App. 3d Cir.1968), the court recognized that Arkansas law follows the general rule that equitable relief from a judgment may be obtained for extrinsic but not intrinsic fraud. Extrinsic fraud is such fraud as would prevent prosecution of an effective defense or would prevent an adversary trial of the issues, while intrinsic fraud is such fraud as would simply amount to an affirmative defense to the original cause of action. Clayton, supra. Without question, the allegations of the second amended petition, previously quoted herein, sufficiently allege a type of extrinsic fraud. See United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93 (1878). The allegations of fraud and ill practices in the instant case not only could serve, if proven, as a defense to recognition of the Arkansas summary judgment, but also as part of the plaintiffs' claims of malpractice and wrongdoing by the defendant attorneys. Thus, the plaintiffs would not run afoul of constitutional provisions concerning full faith and credit by attempting to prove their allegations of fraud and ill practices.
This case was set for trial by jury on August 9, 1993. The morning the jury trial was to begin, the defendant attorneys filed their motion in limine seeking recognition of the Arkansas judgments. This issue was taken up and argued along with the exceptions and motion for summary judgment that same day.
We recognize that the motion in limine was in the nature of an exception of res judicata, and that one entitled to a jury trial is only entitled to have the facts relative to the merits of the case decided by the jury, while matters raised by exception are ordinarily not part of the merits. Therefore, a plaintiff who is entitled to a jury trial ordinarily is not entitled to have the jury decide facts bearing on an exception. See Elzy v. ABC Insurance Company, 472 So.2d 205 (La.App. 4th Cir.1985).
Although a judge ordinarily does not invade the province of a jury by making factual determinations on the trial of exceptions, we find that under the unique facts of this case, the general rule does not fully apply. As mentioned above, the plaintiffs' allegations of fraud and ill practices with respect to the procuring of the Arkansas summary judgment were contained in their second amended petition filed several months prior to the date set for the jury trial. These allegations formed part of the plaintiff's case against the defendant attorneys for malpractice and wrongdoing. The factual proof necessary to sustain these allegations substantially overlapped the proof which plaintiffs would have to have made as a defense to an exception of res judicata. Thus, the question is raised whether these factual issues should have been placed before the jury on the merits, or before the judge pursuant to the "motion in limine." Under these circumstances, and considering the well established principle that the right to a jury trial is fundamental and favored, we hold that the trial court erred in taking these factual issues away from the jury and deciding them in advance of trial pursuant to the "motion in limine" filed the very morning the jury trial was to begin.
We further observe that under principles of merger and bar, parties are prevented from relitigating the same cause of action in a second lawsuit. Furthermore, under principles of collateral estoppel, if a particular issue of fact or law is determined in one lawsuit, then the same parties in a *1382 subsequent lawsuit are collaterally estopped from attempting to have the issue decided differently, even though the second lawsuit is on a different cause of action.
Considering the Arkansas summary judgment under these principles, we conclude that a cause of action by presumptive heirs against the attorneys of an administratrix for fraud and ill practices in the procuring of a judgment is a different cause of action from the action by the administratrix, who was employing other counsel, to attempt to recover on promissory notes. Moreover, individuals accused of obtaining a judgment through fraud and ill practices obviously cannot use the issues of fact or law determined in that judgment to collaterally estop a party bringing an action against those individuals for the fraud and ill practices. Thus, neither principles of merger and bar nor those of collateral estoppel, as applied in common law states, would prevent an attack in Louisiana courts upon the Arkansas summary judgment.
On the other hand, the appellants' pleadings in the trial court, including particularly the second amending petition, do not allege any fraud or ill practices in connection with the Arkansas jury trial as to Note 102. Nor does the appellate record contain a transcript of the hearing on the motion in limine. Under these circumstances, we find no error in the trial court's deciding the question of full faith and credit as to the judgment on Note 102 in advance of the jury trial. We also will presume that the trial court correctly decided any factual issues bearing on the question of full faith and credit. See Hutcherson v. Welch, 316 So.2d 144 (La.App. 2d Cir.1975).
Finally, we hold that the heirs and/or the new succession representative should be considered privies of the administratrix with respect to the Arkansas lawsuit on Note 102. Although the administratrix arguably was in a "conflict of interest" position, as alleged by appellants, the administratrix nevertheless filed a lawsuit in Arkansas on Note 102, and absent any allegations of fraud or ill practices, principles of collateral estoppel must apply to those persons in privity with the administratrix. The appellants, as privies, would have benefited by a favorable judgment on Note 102, and likewise must be burdened by an unfavorable judgment against the administratrix who represented the interests of the succession. We do not find that the issues concerning Note 102 were not fully and fairly litigated in Arkansas, and we do not find it unfair to allow the appellees in the instant case the use of estoppel as a shield under these circumstances. Accordingly, we affirm the trial court's judgment as to the full faith and credit effect to be given the judgment on Note 102.

CONCLUSION
For the reasons set forth above, we hold that the trial court erred in sustaining the exceptions of no cause of action, and in not sustaining the exception of no right of action, except perhaps with respect to Mr. Baggette in his representative capacity. We further hold that the trial court erred in granting the motion in limine as to the Arkansas summary judgment, rather than allowing the issue of fraud to be decided by the jury. On the other hand, we affirm the trial court's decision on the motion in limine with respect to the Arkansas judgment on Note 102, and after having reviewed the record on appeal, we agree with the trial court that there are genuine issues of material fact presented by this litigation, such that summary judgment is not appropriate at this juncture.
The trial court's granting of the exceptions of no cause of action is hereby reversed; the denial of the exception of no right of action is hereby reversed as to all heirs other than Mr. Baggette in his representative capacity; the exception of no right of action vis-a-vis Mr. Baggette as succession representative is vacated; the granting of the motion in limine is reversed as to the Arkansas summary judgment, but affirmed as to the Arkansas judgment on Note 102; the denial of summary judgment is affirmed; and the case is remanded to the trial court for further proceedings in accordance with this opinion. Costs shall be shared equally by appellants and appellees.
*1383 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
VICTORY, J., concurs in result.
NOTES
[1] The record shows that Mr. Baggette again became administrator of the succession in 1990. Thereafter, he appeared individually and as administrator of the succession of Jo Anne Fuller in the motion to dismiss filed July 2, 1990. R. pp. 351-352.